**TRIPLETT GRILLE, INC., d/b/a The Back Door, Plaintiff–Appellee,**

v.

**CITY OF AKRON, Defendant–Appellant.**

No. 93–3418.

United States Court of Appeals, Sixth Circuit.

Argued May 2, 1994.

Decided Nov. 14, 1994.

J. Michael Murray (argued and briefed), Steven D. Shafron, Berkman, Gordon, Murray, Palda & DeVan, Cleveland, OH, Lawrence J. Whitney, Sr., and Burdon & Merlitti, Akron, OH, for plaintiff-appellee.

David A. Muntean, Director of Law, and Deborah M. Forfia (argued and briefed), City of Akron Law Dept., Akron, OH, for defendant-appellant.

Spencer Neth (briefed), Cleveland, OH, for amicus curiae.

Before: MARTIN, NORRIS, and DAUGHTREY, Circuit Judges.

BOYCE F. MARTIN, Jr., Circuit Judge.

Concluding that the First Amendment's guarantee of freedom of expression prevents the City of Akron from enforcing its public indecency ordinance, the district court granted Triplett Grille's prayer for a permanent injunction. The City now appeals.

**I**

Triplett Grille, Inc. operates a club called The Back Door on Triplett Boulevard in Akron, Ohio. At 4:00 p.m. on October 12, 1992, The Back Door began to present entertainment that included nude dancing. Just over an hour later, the Akron Police Department's vice squad, accompanied by City Councilman John Otterman, raided the bar. The officers immediately shut down The Back Door pursuant to Akron City Code Section 111.579, which provides in pertinent part:

> The Police Chief or the Fire Chief, or their designated officers, shall without written notice cause the immediate cessation of any activity described in § 111.570 which is being conducted without benefit of a city license as required in § 111.570 for the reason of improper and illegal operation.

Section 111.570 details Akron's theatrical licensing scheme, which requires all individuals and organizations to obtain a license from the Mayor before presenting "entertainment ... for which money or other reward is in any manner demanded or received." The

performance was not illegal under the public indecency law then in effect.[1]

Over the next few weeks, the club's doors stayed shut as its managers endeavored to obtain the necessary theatrical license. The City's lawmakers, meanwhile, reacted to the public outcry over the presentation of nude dancing at The Back Door. During a citizens' meeting called to discuss the situation, various Councilmen and the City Prosecutor addressed community concerns regarding nude dancing in Akron. Meanwhile, Councilman Otterman explored, with the assistance of the City's law department, possible legal avenues for outlawing nude dancing.

Shortly thereafter, the City Council supplanted the long-standing public indecency ordinance with an Otterman-sponsored ordinance, which on its face bans all nudity in public places. Nudity is broadly defined as "the showing of the human male or female genitals or pubic area with less than a fully opaque covering, the showing of the female breast with less than a fully opaque covering of any part of the nipple, or the showing of the covered male genitals in a discernibly turgid state." A.C.C. § 133.06(B).[2] Adopted as an emergency measure, the ordinance took effect immediately after the Mayor signed it on October 21. The provision clearly prohibits nude dancing at The Back Door.

## II

On November 23, Triplett Grille filed suit in federal district court seeking to enjoin the City from enforcing its revised public indecency ordinance to prevent the performance of nude dancing at The Back Door. The plaintiff claimed that Akron's ordinance was facially unconstitutional and, as applied to nude dancing, improperly infringed on expression protected by the First Amendment. Triplett Grille also challenged the constitutionality of the City's theater licensing scheme.

Triplett Grille's First Amendment claims were tried by the district court on February 10 and March 4, 1993. During the two-day trial, Triplett Grille presented testimony from each member of the City Council and from the Mayor regarding the passage of the public indecency ordinance. The lawmakers explained that they had enacted the provision because a block of constituents voiced moral opposition to The Back Door's nude dancing presentation and also testified that the ordinance was designed to eliminate all public nudity in Akron, including theatrical performances and barroom dancing. None of the witnesses cited the prevention of prostitution or other criminal activity as one of the ordinance's goals, and none was able to specify any problems with public nudity in Akron under the previous public indecency ordinance. Succinctly summing up the City's intent, the Mayor testified that the City Council enacted the ordinance to establish "a community standard."

In a carefully detailed opinion dated March 17, the district court concluded that Akron's public indecency ordinance violated the First Amendment. 816 F.Supp. 1249. While acknowledging that the Supreme Court recent-

---

1. Section 133.06 of the Akron City Code provided:
   (A) No person shall recklessly do any of the following, under circumstances in which his or her conduct is likely to be viewed by and affront others, not members of his or her household:
   (1) Expose his or her private parts, or engage in masturbation;
   (2) Engage in sexual conduct;
   (3) Engage in conduct which to an ordinary observer would appear to be sexual conduct or masturbation.

2. Akron's public indecency ordinance now provides:
   (A) No person shall knowingly or intentionally, in a public place:
   (1) Engage in sexual intercourse;
   (2) Engage in deviant sexual conduct;
   (3) Appear in a state of nudity; or
   (4) Fondle the genitals of himself or another person.
   (B) For the purpose of this section only, the following definitions shall apply:
   *"Nudity"* means the showing of the human male or female genitals or pubic area with less than a fully opaque covering, the showing of the female breast with less than a fully opaque covering of any part of the nipple, or the showing of the covered male genitals in a discernibly turgid state.
   *"Public Place"* means any street, sidewalk, right of way and any public or private building or place where the general public is invited. A.C.C. § 133.06.

ly upheld an Indiana statute with virtually identical language in *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 111 S.Ct. 2456, 115 L.Ed.2d 504 (1991), the court determined that the fractured nature of the Court's decision made necessary an analysis of the Akron ordinance as applied to The Back Door. As the district court noted, three opinions make up the majority in *Barnes:* Chief Justice Rehnquist wrote for Justices O'Connor and Kennedy, while Justices Souter and Scalia each concurred separately, taking pains to disavow at least portions of the Rehnquist opinion. The Chief Justice's opinion, which upholds the Indiana public indecency statute, is built around the four-part test developed by the Court in *United States v. O'Brien,* 391 U.S. 367, 377, 88 S.Ct. 1673, 1679, 20 L.Ed.2d 672 (1968): "a government regulation is sufficiently justified if it is within the constitutional power of the Government; if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest". Although Justice Souter agreed with the plurality that nude dancing enjoys First Amendment protection, and also agreed that the statute should be analyzed under the *O'Brien* test, he disagreed as to the interest justifying restriction of First Amendment rights of expression. Justice Scalia, on the other hand, rejected altogether the contention that nude dancing is entitled to First Amendment protection.

In light of the Supreme Court's instruction that "[w]hen a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds,'" *Marks v. United States,* 430 U.S. 188, 193, 97 S.Ct. 990, 993, 51 L.Ed.2d 260 (1977) (citing *Gregg v. Georgia,* 428 U.S. 153, 169 n. 15, 96 S.Ct. 2909, 2923 n. 15, 49 L.Ed.2d 859 (1976)), the district court closely examined the three opinions making up the *Barnes* majority. After reviewing the holding of each, and the legal context in which each opinion's analysis is grounded, the court

concluded that Justice Souter ruled on the narrowest grounds. As the district court summarized:

> Justice Scalia very broadly denies all First Amendment protection to nude dancing. The plurality dramatically expands the scope of the *O'Brien* test by allowing morality concerns to justify local legislation. Justice Souter, in contrast, bases his application of the *O'Brien* test on assumptions previously upheld in *Renton.*

The court thus reviewed the Akron ordinance under Justice Souter's analytical framework. In doing so, the district court reasoned that the Akron ordinance could survive scrutiny only if it was designed to prevent the occurrence of harmful secondary effects associated with adult entertainment, including crime and prostitution. *See Barnes,* 501 U.S. at 582–86, 111 S.Ct. at 2469–70 (Souter, J., concurring) (citing *City of Renton v. Playtime Theatres, Inc.,* 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986)). As the City's lawmakers claimed during trial that they were moved to enact the ordinance only by morality concerns and failed to dwell on an interest in combatting secondary effects, the district court concluded that the ordinance is constitutionally deficient as applied to prohibit nude dancing. While acknowledging that Justice Souter simply assumed that members of the Indiana legislature considered secondary effects when enacting the statute at issue in *Barnes,* the district court found such a presumption inapplicable here because "every Akron law maker testified concerning Council's deliberation before enacting the new public indecency law. There are no anonymous law makers to whom the court can attribute a secondary effects concern." In reaching this conclusion, the district court rejected the City's objections to the use of the lawmakers' testimony, finding instead that the testimony was properly considered for the purpose of determining what evidence was before the City Council when the Akron ordinance was adopted.

The district court went on to find that the Akron ordinance was facially invalid. As the district court recognized, there was no overbreadth claim before the Supreme Court in *Barnes* because the Seventh Circuit had ear-

lier held that the Indiana public indecency statute at issue had been sufficiently limited by judicial construction. *See Glen Theatre, Inc. v. Pearson,* 802 F.2d 287, 288 (7th Cir. 1986) (concluding that "Indiana Supreme Court adequately narrowed the statute"). Nevertheless, the district court found it necessary to look to *Barnes* to determine whether the Akron ordinance regulated expression protected under the First Amendment. Relying again on Justice Souter's secondary effects analysis, the district court concluded that because "[t]he broad range of expressive conduct which is potentially prohibited by Akron's ordinance has not been shown to be harmful," the public indecency provision "goes significantly beyond its only legitimate sweep, combatting the secondary effects of adult entertainment." To hold otherwise, the district court observed, would give the City the right to ban live performances with serious literary, artistic, or political value. As the City could point to no link between nudity in non-adult entertainment and secondary effects, the district court found that the Akron ordinance necessarily proscribed protected expression and was thus overbroad.

Having concluded that the Akron ordinance violates the First Amendment, the district court enjoined the City from enforcing its public indecency statute. This timely appeal followed.

### III

At the outset, we are presented with the vexing task of divining which of the varied standards enunciated in *Barnes* is the law of the land. As noted earlier, *Barnes* engendered four separate opinions, none of which commanded a majority of the Justices. *See Barnes,* 501 U.S. at 561–63, 111 S.Ct. at 2458 (opinion of Rehnquist, C.J.) (joined by O'Connor and Kennedy, JJ.); *id.* at 571–72, 111 S.Ct. at 2463 (Scalia, J., concurring); *id.* at 580–82, 111 S.Ct. at 2468 (Souter, J., concurring); *id.* at 587, 111 S.Ct. at 2471 (White, J., dissenting) (joined by Marshall, Blackmun, and Stevens, JJ.). Chief Justice Rehnquist's attempt to win acceptance for the proposition that the enforcement of morality is a proper basis for limiting the freedom of speech did not win majority support: only Justices

O'Connor and Kennedy joined the Rehnquist opinion. *Barnes,* 501 U.S. at 561–63, 111 S.Ct. at 2458. While Justice Souter agreed with the Chief Justice that the Indiana statute was properly analyzed under the four-part *O'Brien* test, he identified material harms, not moral concerns, as the basis for restricting First Amendment protection for expressive conduct. *Id.* at 582, 111 S.Ct. at 2468–69 ("I nonetheless write separately to rest my concurrence in the judgment, not on the possible sufficiency of society's moral views to justify the limitations at issue, but on the State's substantial interest in combating the secondary effects of adult entertainment establishments of the sort typified by respondents' establishments."). Justice Scalia, the fifth Justice concurring in the result, concluded that nude dancing is not inherently expressive activity entitled to First Amendment protection. *Id.* at 561, 111 S.Ct. at 2458 (concluding that "[m]oral opposition to nudity supplies a rational basis for its prohibition, and since the First Amendment has no application to this case no more than that is needed"). Justice White, joined by Justices Marshall, Blackmun, and Stevens, dissented. Although binding on this Court, this splintered decision provides little clear guidance for resolving the question of whether the Akron ordinance at issue here impermissibly infringes expressive conduct protected by the First Amendment.

Well aware of the difficulties created by fractured decisions, the Supreme Court counseled in *Marks* that, when the Court issues such a decision, the opinion of the Justice concurring in the judgment on the "narrowest grounds" should be regarded as the Court's holding. *Marks,* 430 U.S. at 193, 97 S.Ct. at 993 (citation omitted). As the Third Circuit has cogently observed:

The principal objective of this *Marks* rule is to promote predictability in the law by ensuring lower court adherence to Supreme Court precedent. This objective requires that, whenever possible, there be a single legal standard for the lower courts to apply in similar cases and that this standard, when properly applied, produce results with which a majority of the Justices in the case articulating the standard

would agree.... [W]here no single rationale 'enjoys the assent of five Justices,' the situation becomes more complex, but the controlling principle is the same. Where a Justice or Justices concurring in the judgment in such a case articulates a legal standard which, when applied, will necessarily produce results with which a majority of the Court from that case would agree, that standard is the law of the land. *Planned Parenthood of Southeastern Pa. v. Casey*, 947 F.2d 682, 693 (3d Cir.1991) (citation omitted), *aff'd in part and rev'd in part*, — U.S. ——, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992); *see also Lundblad v. Celeste*, 874 F.2d 1097, 1101–02 & n. 4 (6th Cir.1989) (following Justice Stewart's concurring opinion in *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976)), *modified on other grounds*, 924 F.2d 627 (1991). Admittedly, the *Marks* rule is less useful where, as here, no opinion, however narrowly construed, may be said to embody a position that enjoys the support of at least five Justices who concurred in the judgment. Nevertheless, our obligation to follow the Supreme Court's decision coupled with the fact that *Marks* remains the Court's only guidance on how lower courts should comply with this duty leads us to rely upon the rule for instruction in reading the tea leaves of *Barnes*.

Applying the *Marks* rule, the district court correctly concluded that Justice Souter's concurring opinion resolved the question before the Supreme Court on the narrowest grounds. Justice Souter's opinion, which was necessary to uphold the Indiana statute, set forth as its standard a coherent subset of the principles articulated in the plurality opinion. As a logical consequence of their approval of morality justifications for regulations of speech, Chief Justice Rehnquist, Justice O'Connor and Justice Kennedy implicitly agreed with Justice Souter that governmental efforts to control the harmful secondary effects associated with adult entertainment can serve as a basis for restricting activities that enjoy First Amendment protection. In fact, the Chief Justice's opinion specifically detailed material harms as one of the legitimate governmental interests justifying the regulation of speech:

This and other public indecency statutes were designed to protect morals and public order. The traditional police power of the States is defined as the authority to provide for the public health, safety, and morals, and we have upheld such a basis for legislation.... Thus, the public indecency statute furthers a substantial government interest in protecting order and morality.

*Barnes*, 501 U.S. at 569, 111 S.Ct. at 2462 (citations omitted). Because Justice Souter's opinion articulates a common underlying approach, it may be said to decide the question presented to the Court in *Barnes* on the "narrowest grounds."

Given this conclusion and the lower court's obligation to adhere to the Supreme Court's decision, the district court did not err in regarding Justice Souter's opinion in *Barnes* as binding precedent. *See International Eateries of Am., Inc. v. Broward County*, 941 F.2d 1157, 1160–61 (11th Cir.1991) (concluding, based on Souter opinion, that "in order to uphold a statute regulating nude dancing, it is still necessary after *Barnes* that the statute meet the secondary effects test of *Renton* "), *cert. denied*, — U.S. ——, 112 S.Ct. 1294, 117 L.Ed.2d 517 (1992); *see also Tyler v. Bethlehem Steel Corp.*, 958 F.2d 1176, 1183 (2d Cir.) ("Despite the inarguable fact that only *four* justices in *Price Waterhouse* [*v. Hopkins*, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989)] would have imposed a 'direct evidence' requirement for 'mixed-motives' cases, most circuits have engrafted this requirement into caselaw."), *cert. denied*, — U.S. ——, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992). While "there is some awkwardness in attributing precedential value to an opinion of one Supreme Court justice to which no other justice adhered, it is the usual practice when that is the determinative opinion." *Blum v. Witco Chemical Corp.*, 888 F.2d 975, 981 (3d Cir.1989) (following Justice O'Connor's concurring opinion in *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 483 U.S. 711, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987)). The unique approach taken by Justice Scalia does not, in this singular situation, alter our conclusion. In light of the Supreme Court's failure to agree upon a rationale for the

result in *Barnes,* the badly splintered nature of the Court's decision, and the lack of prior controlling precedent from this Court, we agree with the district court that Justice Souter's opinion may properly be regarded as providing the proper framework for addressing the question presented here.

■ The district court's reliance on Justice Souter's opinion to strike down the Akron ordinance as applied to nude dancing at the Triplett Grille is, however, misplaced. By requiring affirmative evidence of a secondary effects motivation, the district court imposes a burden on the City that Justice Souter's opinion seems designed to avoid. As Justice Souter observed:

> In light of *Renton's* recognition that legislation seeking to combat the secondary effects of adult entertainment need not await localized proof of those effects, the State of Indiana could reasonably conclude that forbidding nude entertainment of the type offered at the Kitty Kat Lounge and the Glen Theatre's "bookstore" furthers its interest in preventing prostitution, sexual assault, and associated crimes.... I do not believe that a State is required affirmatively to undertake to litigate this issue repeatedly in every case.

*Barnes,* 501 U.S. at 584–85, 111 S.Ct. at 2470. Moreover, there is evidence in the record suggesting that a number of Akron City Councilmen actually supported the public indecency ordinance in part because they wished to prevent the occurrence of harmful secondary effects. *See* Joint Appendix at 156 (Councilman Sommerville testified ordinance was passed because constituents were concerned that "nude dancing brought a certain element to the neighborhood"); J.A. at 182 (Councilman Bolden testified that he supported ordinance because constituents felt there were "problems in neighborhoods and they asked for help"). Finally, because the Akron public indecency ordinance is virtually identical to the Indiana statute considered in *Barnes,* the district court was bound to adhere to the specific result of that case, even though the Supreme Court failed to agree on governing standards. *See Casey,* 947 F.2d at 691–92 ("As a lower court, we are bound by both the Supreme Court's choice of legal standard or test and by the result it reaches under that standard or test."). Given the language of Justice·Souter's opinion, the evidence presented at trial, and the requirement of judicial fealty to the result reached by the Supreme Court in *Barnes,* the district court erred in concluding that the Akron ordinance was unconstitutional as applied because it was not enacted to combat the secondary effects· of adult entertainment.

■ Because the City has failed to demonstrate a link between nudity in non-adult entertainment and secondary effects, we do agree with the district court that the Akron ordinance must be struck down as facially unconstitutional under the·First Amendment overbreadth doctrine. As this Court has recognized, the "overbreadth doctrine constitutes an exception to traditional rules of standing and is applicable only in First Amendment cases in order to ensure that an overbroad statute does not act to 'chill' the exercise of rights guaranteed · protection." *Leonardson v. City of East Lansing,* 896 F.2d 190, 195 (6th Cir.1990) (quoting *NAACP v. Button,* 371 U.S. 415, 433, 83 S.Ct. 328, 338, 9 L.Ed.2d 405 (1963)). Under the doctrine, "an individual whose own speech or conduct may be prohibited is permitted to challenge a statute on its face 'because it also threatens others not before the court—those who desire to engage in legally protected expression but who may refrain from doing so rather than risk prosecution or undertake to have the law declared partially invalid.'" *Board of Airport Comm'rs v. Jews for Jesus, Inc.,* 482 U.S. 569, 574, 107 S.Ct. 2568, 2572, 96 L.Ed.2d 500 (1987) (quoting *Brockett v. Spokane Arcades, Inc.,* 472 U.S. 491, 105 S.Ct. 2794, 86 L.Ed.2d 394 (1985)). While the overbreadth doctrine is "strong medicine" that is used "sparingly and only as a last resort," *Broadrick v. Oklahoma,* 413 U.S. 601, 613, 93 S.Ct. 2908, 2916, 37 L.Ed.2d 830 (1973), a plaintiff may prevail on a facial attack by demonstrating there is "a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court." *City Council of Los Angeles v. Taxpayers for Vincent,* 466 U.S. 789, 801, 104 S.Ct. 2118, 2126, 80 L.Ed.2d 772 (1984).

The Akron public indecency ordinance at issue here prohibits all public nudity, including live performances with serious literary, artistic, or political value. The ordinance makes no attempt to regulate only those expressive activities associated with harmful secondary effects and includes no limiting provisions. Instead, Akron's wide ban on public nudity sweeps within its ambit expressive conduct not generally associated with prostitution, sexual assault, or other crimes. As Justice Souter acknowledged in *Barnes:*

It is difficult to see, for example, how the enforcement of Indiana's statute against nudity in a production of "Hair" or "Equus" somewhere other than an "adult" theater would further the State's interest in avoiding harmful secondary effects, in the absence of evidence that expressive nudity outside the context of Renton-type adult entertainment was correlated with such secondary effects.

*Barnes,* 501 U.S. at 585 n. 2, 111 S.Ct. at 2470 n. 2.[3] Because the City failed to present evidence linking expressive nudity in "high-culture" entertainment to harmful secondary effects, we conclude that the ordinance infringes speech protected by the First Amendment.

While loath to find that the Akron public indecency ordinance violates the First Amendment, this Court is unable to supply a limiting construction for the regulation. It is well recognized that federal "courts do not rewrite statutes to create constitutionality." *Eubanks v. Wilkinson,* 937 F.2d 1118, 1122 (6th Cir.1991). As this Court recently emphasized:

A federal court must always be aware of the federalism concerns that arise whenever it deals with state statutes. 'The principles of federalism forbid a federal appellate court to arrogate the power to rewrite a municipal ordinance.'

*Id.* at 1125 (citation omitted). It would therefore be improper for this Court to supply limiting language for Akron's public indecency ordinance in order to preserve its constitutionality.

## IV

As the Akron public indecency ordinance is substantially overbroad, and is not fairly subject to a saving construction, we conclude that the ordinance violates the First Amendment. The judgment of the district court is affirmed.

---

**3.** As noted earlier, the Supreme Court did not confront a First Amendment overbreadth challenge in *Barnes* because the Indiana Supreme Court supplied a limiting construction for the particular statute at issue. *See Glen Theatre, Inc.,* 802 F.2d at 289–90 (concluding that "Indiana Supreme Court adequately narrowed the statute").