J.L. SPOONS, INC., et al., Plaintiffs,

v.

Mitchell BROWN, Director, et al., Defendants.

No. 1:98CV2857.

United States District Court, N.D. Ohio, Eastern Division.

March 12, 1999.

J. Michael Murray, Steven D. Shafron, Jeremy A. Rosenbaum, Berkman, Gordon, Murray & DeVan, Cleveland, OH, for plaintiffs.

Chester T. Lyman, Jr., David A. Raber, Office Of The Attorney General Business

& Government Regulation Columbus, OH, for defendant.

## MEMORANDUM AND ORDER

ALDRICH, District Judge.

The plaintiffs bring this action to challenge the constitutionality of recently-promulgated Ohio Administrative Code 4301:1–1–52 ("Rule 52"). After a hearing, this Court issued a temporary restraining order (TRO) prohibiting the defendants from enforcing Rule 52 against the plaintiffs. The TRO was extended for an additional ten days, and the parties submitted supplementary briefs and evidentiary materials. The defendants requested a hearing on the plaintiffs' motion for a preliminary injunction as well as an extension of time in which to file a responsive pleading to the complaint. This Court granted both requests. The defendants have now filed a responsive pleading in which they move for dismissal of the complaint and vacation of the order scheduling a preliminary injunction hearing. (Doc. # 19). The plaintiffs oppose this motion. Because this case presents a justiciable controversy, and because the complaint states a claim against appropriate parties upon which relief can be granted, this Court denies the defendants' motion to dismiss in its entirety.

### I. Background

This action comes on the heels of a prior case in which this Court invalidated an old version of Rule 52 on overbreadth grounds. See *J.L. Spoons, Inc., v. City of Brunswick,* 181 F.R.D. 354 (N.D.Ohio1998). After this Court concluded that the old Rule 52 violated the First Amendment, the Ohio Liquor Control Commission (OLCC) rescinded that version of the law and promulgated a new Rule 52.[1] On December 10, 1998—the date the new version was supposed to go into effect—the plaintiffs sought a TRO to

prevent the defendants from enforcing the new Rule 52 (hereinafter simply "Rule 52"). After a hearing in which all parties were represented, this Court found that the plaintiffs satisfied the requirements for a TRO, and, accordingly, temporarily enjoined the defendants from enforcing particular sections of Rule 52 against the plaintiffs.

The plaintiffs—J.L. Spoons, Inc., Cleveland's P.M. on the Boardwalk, Ltd., and Entertainment U.S.A. of Cleveland, Inc.—operate cabarets which feature live performances by female dancers who, in the course of their performances, appear topless and in G-strings. The plaintiffs also hold permits from the state of Ohio to dispense alcoholic beverages in these cabarets. Under 42 U.S.C. § 1983 and 28 U.S.C. §§ 2201–02, they have sued the Ohio Department of Public Safety (ODPS) and its director, Mitchell Brown, to prevent these defendants from enforcing various sections of Rule 52. The challenged sections prohibit permit holders from allowing anyone on their permit premises to "engage in any lewd or disorderly activities," "appear in a state of nudity," "touch, fondle, or caress [certain body parts] of any person," or "commit improper conduct of any kind ... that would offend the public's sense of decency, sobriety, or good order." Ohio Admin. Code 4301:1–1–52 §§ (B)(1), (B)(2), (B)(3), (B)(7) (1998). The plaintiffs also challenge related sections of the regulation which define "lewd activities" and "nudity." *Id.* at §§ (A)(1), (A)(3).

The cabaret operators argue that Rule 52 is a content-based restriction upon their freedom of expression, and, moreover, that Rule 52 is unconstitutionally overbroad and vague on its face. Brown and ODPS dispute these allegations and argue that Rule 52 validly regulates conduct rather

---

**1.** State agents had appealed this Court's June 15, 1998 ruling that found the old version of Rule 52 unconstitutional, but they voluntarily dismissed that appeal on February 12, 1999. The prior case and the instant action are related, and this Court takes note of the record in the previous case to the extent that it is

relevant to the issues presented here. In addition, although defendants' counsel claims that state agents had considered revising Rule 52 prior to this Court's invalidation of it, the evidence shows that promulgation of the new rule was prompted at least in part by this Court's June 15, 1998 ruling.

than speech. After issuing the TRO and considering briefs filed on behalf of all parties, this Court ordered the defendants to show cause as to why the challenged portions of Rule 52 should not be preliminarily enjoined. The defendants submitted a memorandum and evidentiary material in response, and asked that a hearing be conducted on the plaintiffs' motion for a preliminary injunction. At the time a hearing was scheduled, Brown and ODPS moved for additional time in which to file a response to the complaint. This Court granted that request, and, subsequently, the defendants filed the instant motion to dismiss the case. The plaintiffs oppose the motion.

## II. *Justiciability*

Brown and ODPS raise three questions of justiciability in their motion to dismiss. First, they argue that this case is not ripe for review. Second, they contend that J.L. Spoons, Inc. and the other cabaret operators do not have standing to bring this action. Finally, the defendants claim that this Court should abstain from exercising its jurisdiction in this case. Each of these contentions will be addressed in turn.

### A. *Ripeness of controversy*

Brown and ODPS argue that the "case or controversy" requirement of Article III of the United States Constitution is not satisfied in this matter, and that this case is not ripe for review. In support of this claim, they indicate that they have not yet enforced Rule 52 against the plaintiffs or any other liquor permit holders.[2] The defendants also assert that because neither the OLCC nor Ohio courts have had an opportunity to interpret Rule 52, it would be premature for a federal court to assess its constitutionality.

■ The defendants' arguments lack merit. It is evident that the parties disagree over their rights and obligations under Rule 52, and that the controversy arises in the context of prior, related litigation. The concrete issues presented in this case are of immediate import to the parties, especially where the threat of enforcement "hangs over [the plaintiffs] like the sword over Damocles." *Metropolitan Washington Airports Auth. v. Citizens for the Abatement of Aircraft Noise,* 501 U.S. 252, 265 n. 13, 111 S.Ct. 2298, 115 L.Ed.2d 236 (1991) (challenge to board's veto power ripe even though veto power had not caused detriment to plaintiff). The defendants acknowledge that enforcement of Rule 52 could result in fines and/or revocation of the plaintiffs' liquor permits, but they fail to recognize that the threat of economic injury and the risk of self-censorship are sufficient to ripen a case like this one for adjudication.[3] *See, e.g., Virginia v. American Booksellers Ass'n,* 484 U.S. 383, 393, 108 S.Ct. 636, 98 L.Ed.2d 782 (1988) (self-censorship is itself a harm). In light of the imminent threat of enforcement and the credible "chilling" of First Amendment rights, this Court finds the case fit for review.[4] *See National Rifle Ass'n v. Magaw,* 132 F.3d 272, 284–85 (6th Cir.1997) (ripeness inquiry in pre-enforcement First Amendment cases focuses on threat of prosecution and genuine risk of chilled expression).

2. In support of their requests for a preliminary injunction hearing and for an extension of time, the defendants agreed not to enforce Rule 52 against the three plaintiffs until this Court can rule on the motion for an injunction. Although Brown and ODPS are free to enforce Rule 52 against the over 23,000 other permit holders in Ohio, they apparently are choosing not to do so at this time.

3. It is also significant that the cabaret owners are seeking not just declaratory relief, but injunctive relief as well. This Court has already found that the threat of immediate and irreparable harm to the plaintiffs is sufficient to support the issuance of a TRO. *See* TRO issued December 10, 1998. Contrary to the defendants' assertions, there is nothing "advisory" about enjoining state agents from enforcing an unconstitutional regulation.

4. The defendants' reliance upon *FCC v. Pacifica Foundation,* 438 U.S. 726, 98 S.Ct. 3026, 57 L.Ed.2d 1073 (1978), is wholly misplaced. *Pacifica* dealt with the FCC's authority to regulate indecent language over the airwaves, and involved no issues of ripeness or justiciability whatsoever.

## B. *Plaintiffs' standing*

■ An issue related to ripeness involves the plaintiffs' standing to bring this action. Pre-enforcement review of a statute is proper when the threat of enforcement is real and imminent. *See City of Houston v. Hill,* 482 U.S. 451, 459 n. 7, 107 S.Ct. 2502, 96 L.Ed.2d 398 (1987) (plaintiff who shows genuine threat of enforcement against future activities may seek prospective relief). Here, the old version of Rule 52 was actively enforced against the plaintiffs. The plaintiffs' current expressive activities fall within the proscriptions of the new rule, and enforcement of Rule 52 could cause them to lose their liquor permits. Neither the defendants nor any other state agents have indicated an intent to limit the enforcement of Rule 52. Nothing in the text of the rule itself limits its enforcement.

■ Brown and ODPS try to circumvent this showing of a threat of enforcement by arguing that only dancers, and not the cabarets themselves, enjoy protection under the First Amendment. The only legal support they can muster up in support of this argument is a dissent to a denial for writ of certiorari which points out that a dancer has standing to challenge an indecent-exposure statute. *See Young v. Arkansas,* 474 U.S. 1070, 106 S.Ct. 830, 88 L.Ed.2d 801 (1986) (White, J., and Brennan, J., dissenting from denial of writ of certiorari). A cabaret's standing was neither relevant nor mentioned in that dissent. The paucity of legal authority in the defendants' brief is telling, as corporate entities do, in fact, have a right to freedom of expression under the First Amendment. *See, e.g., First Nat'l Bank of Boston v. Bellotti,* 435 U.S. 765, 98 S.Ct. 1407, 55 L.Ed.2d 707 (1978) (striking down ban on corporate political advocacy under First Amendment). Even if this right could be limited in certain contexts, there is no

reason to limit it here; history is replete with cases in which cabaret operators have challenged regulations like Rule 52. *See, e.g., Triplett Grille, Inc. v. City of Akron,* 40 F.3d 129 (6th Cir.1994) (corporate club operator successfully challenged indecency ordinance under First Amendment). Moreover, the language of Rule 52 clearly indicates that the rule can only be enforced against permit holders. The plaintiffs in this action—and not the dancers who perform in their clubs—are permit holders.

Because the cabaret operators have demonstrated a threat of actual injury, this Court concludes that they have standing to challenge Rule 52 as it applies to them.

■ In addition, under an exception to traditional standing requirements, the plaintiffs may challenge Rule 52 as facially overbroad in violation of the First Amendment. This exception applies in First Amendment cases "to ensure that an overbroad statute does not act to 'chill' the exercise of rights guaranteed protection." *Id.* at 135 (quotation and citations omitted). "Litigants, therefore, are permitted to challenge a statute not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression." *Broadrick v. Oklahoma,* 413 U.S. 601, 612, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973)). Thus, the plaintiffs also have standing to challenge Rule 52 on grounds of overbreadth.[5]

## C. *Abstention*

■ The defendants also assert that it is appropriate for this Court to abstain from reviewing Rule 52 until state courts and the OLCC have had an opportunity to

---

**5.** The defendants cite *McKart v. United States,* 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969), for the proposition that the plaintiffs should be required to exhaust their state administrative remedies before turning to this Court for relief. *McKart* involved the admin-

istrative regime under the Selective Service laws; neither that regime nor the exhaustion doctrine has any bearing on the instant case. Indeed, it is the enforcement process itself that threatens the plaintiffs' freedom of expression.

interpret it. Their reliance on *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), is misplaced. *Burford* abstention applies when a federal decision could disrupt an elaborate state regulatory scheme, usually one involving the management of scarce resources. *Burford* creates a narrow exception that does not fit the facts of this case.

■ Similarly, the defendants' reference to *Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc.*, 477 U.S. 619, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986), seriously misses the mark. That case applies the abstention principles of *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and its progeny—i.e., that federal courts generally should not enjoin pending state judicial proceedings—to the injunction of certain state administrative proceedings. *See Dayton Christian*, 477 U.S. at 625–28, 106 S.Ct. 2718. *Younger* abstention only applies when a party to a pending state proceeding seeks to enjoin that proceeding in federal court. *See Doran v. Salem Inn, Inc.*, 422 U.S. 922, 930–31, 95 S.Ct. 2561, 45 L.Ed.2d 648 (*Younger* abstention only applied to operator of bar who was being prosecuted in state court, and not to plaintiffs who were not being charged). Here, none of the cabaret operators are either involved in a state proceeding or seeking to enjoin a state proceeding. *Younger* abstention is simply inapplicable to this case.

■ Although ODPS and Brown do not argue that *Railroad Comm'n v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), counsels in favor of abstention, this Court notes that *Pullman* abstention is also inapplicable to this case. *Pullman* holds that a federal court should abstain if a decision on state-law grounds would permit the court to avoid a federal constitutional question. However, abstention is "the exception and not the rule, and ... is inappropriate for cases [where] ... statutes are justifiably attacked on their face as abridging free expression." *Hill*, 482 U.S. at 467, 107 S.Ct. 2502 (quotation and citations omitted). This is so because

"to force the plaintiff who has commenced a federal action to suffer the delay of state-court proceedings might itself effect the impermissible chilling of the very constitutional right he seeks to protect." *Id.* at 467–68, 107 S.Ct. 2502 (quotation and citation omitted). Moreover, Rule 52 is relatively unambiguous, and "when a statute is not ambiguous, there is no need to abstain *even if state courts have never interpreted the statute.*" *Id.* at 469, 107 S.Ct. 2502 (emphasis added). Because Rule 52 is not readily subject to a state-law interpretation which would render unnecessary the First Amendment question, *Pullman* abstention does not apply, and this Court must exercise its properly invoked jurisdiction.

### III. *Joinder of parties*

■ Brown and ODPS contend that the cabaret operators have failed to join a necessary party to this litigation: OLCC. Without citing any case law in support of this contention, the defendants argue that OLCC is an essential party in interest because OLCC drafted Rule 52 and is responsible for applying it. The plaintiffs, on the other hand, indicate that Brown and ODPS are charged with investigating and prosecuting violations of Rule 52; they argue that suing OLCC would be the equivalent of suing Congress in a challenge against the constitutionality of a federal statute.

This Court finds that Brown and ODPS are appropriate parties in this litigation, and that these parties have failed to show that Federal Rule of Civil Procedure 19(a) requires the joinder of OLCC. Therefore, the defendants' motion to dismiss the complaint pursuant to Rule 12(b)(7) must be denied.

### IV. *Stating claim upon which relief can be granted*

In ruling on a motion to dismiss, this Court must construe the complaint liberally "and accept as true all factual allegations and permissible inferences therein." *Gazette v. City of Pontiac*, 41 F.3d 1061,

1064 (6th Cir.1994). The weight of the evidence and the credibility of witnesses are not factors to be considered when resolving a motion to dismiss; rather, a court "should deny the motion unless it is clear that the [plaintiffs] can prove no set of facts in support of [their] claim that would entitle [them] to relief." *Miller v. Currie,* 50 F.3d 373, 377 (6th Cir.1995) (citation omitted). A court should be especially careful in dismissing a civil rights complaint. *See Kent v. Johnson,* 821 F.2d 1220, 1223 (6th Cir.1987). While the complaint must give the defendants fair notice of the nature of the plaintiffs' claim, it need not describe in detail all the particularities of the claim. *Gazette,* 41 F.3d at 1064. A Rule 12(b)(6) motion should be granted only if the complaint fails to state a claim for which the law provides relief. *Id.*

 The defendants' argument that the complaint fails to state a valid claim for relief merely recycles their justiciability arguments. That is, Brown and ODPS assert that the cabaret operators have filed this action prematurely, and that the plaintiffs would not be entitled to declaratory and injunctive relief. As discussed previously, this Court finds that there is a concrete, bona fide dispute between the parties, and that the plaintiffs have shown a sufficient threat of injury to warrant pre-enforcement review of Rule 52. Accepting the allegations in the complaint as true, as a court must do when resolving a motion to dismiss, it is clear that the plaintiffs state a claim for violation of their First Amendment rights upon which relief can be granted. If the plaintiffs prevail, then they would be entitled to both declaratory and injunctive relief. *See, e.g., Triplett Grille,* 40 F.3d at 136 (affirming permanent injunction of facially overbroad ordinance).

Finally, in a step that is inconsistent with their demand for a preliminary injunction hearing, the defendants ask this Court to address the substantive merits of the plaintiffs' First Amendment claim. This Court finds it inappropriate to consider the merits of the case pursuant to a motion to dismiss. The defendants' motion to vacate the scheduling of a preliminary injunction hearing is denied, and notice of a new hearing date will be issued in a separate order.

### V. *Conclusion*

For the foregoing reasons, this Court concludes that the case is ripe for review, that the plaintiffs have standing to bring the action, and that it would be improper for this Court to abstain from exercising its jurisdiction. This Court also concludes that the plaintiffs have joined necessary parties and have stated a claim upon which relief can be granted. Accordingly, the defendants' motion to dismiss the complaint and vacate the preliminary injunction hearing is denied in its entirety.

IT IS SO ORDERED.