**J.L. SPOONS, INC., et al., Plaintiffs,**

v.

**Maureen O'CONNOR, Director,
et al., Defendants.**

No. 1:98CV2857.

United States District Court,
N.D. Ohio,
Eastern Division.

July 5, 2000.

J. Michael Murray, Steven D. Shafron, Jeremy A. Rosenbaum, Berkman, Gordon, Murray & DeVan, Cleveland, OH, for J.L. Spoons, Inc., Clevelands's P.M. on the Boardwalk, Entertainment U.S.A. of Cleveland, Inc., plaintiffs.

Chester T. Lyman, Jr., Office of the Attorney General, David A. Raber, Office of the Attorney General, Business & Government Regulation, Columbus, OH, for Ohio Department of Public Safety, defendant.

Chester T. Lyman, Jr., Office of the Attorney General, Columbus, OH, for Maureen O'Connor, defendant.

## MEMORANDUM AND ORDER

ANN ALDRICH, District Judge.

This case involves a challenge to the constitutionality of the current version of Ohio Administrative Code 4301:1–1–52 ("Rule 52") under the First Amendment to the United States Constitution and Article 1, § 11 of the Ohio Constitution. On December 28, 1999, this Court preliminarily enjoined the defen-

dants from enforcing certain sections of Rule 52 against the plaintiffs. Thereafter, the plaintiffs filed a motion for a permanent injunction based on the current record (doc. # 41–1), or, in the event that the defendants were to propose to offer additional evidence, a motion to set a trial date (doc. # 41–2). The defendants have not proposed to submit new evidence, but they have asked this Court to reconsider some of its previous findings (doc. # 42). For the reasons stated below, this Court denies the defendants' motion for reconsideration; grants the plaintiffs' motion for a permanent injunction; and denies the plaintiff's request to set a trial date as moot. Furthermore, this Court declares the following portions of Rule 52 unconstitutional, and permanently enjoins their enforcement: §§ (A)(1), (A)(3), (B)(1) (in part), (B)(2), (B)(3), and (B)(7).[1]

## I. Background

The plaintiffs—J.L. Spoons, Inc., Cleveland's P.M. on the Boardwalk, Ltd., and Entertainment U.S.A. of Cleveland, Inc.—hold liquor permits from the state of Ohio and operate cabarets which feature live performances by female dancers who, in the course of their performances, appear topless and in G-strings. The plaintiffs have sued the Ohio Department of Public Safety ("ODPS") and its director, Maureen O'Connor, to prevent these defendants from enforcing certain sections of Rule 52. This Court described the history of this litigation in the December 28, 1999 preliminary injunction order, and there is no need to repeat that history here. *See J.L. Spoons, Inc. v. O'Connor*, 190 F.R.D. 433, 435–37 (N.D.Ohio 1999).

In the December 28, 1999 order, this Court found that Rule 52 is a content-neutral regulation that may be constitutionally applied to the plaintiffs, with the exception of § (B)(7), which goes "well beyond what is necessary to further Ohio's interest in combating the secondary effects of sexually-oriented busi-

---

1. As discussed below with respect to § (B)(1) of Rule 52, this Court permanently enjoins the enforcement of § (B)(1) only to the extent the section prohibits "lewd activities." This Court neither addresses nor enjoins the prohibition of "disorderly activities" in that section (the term "disorderly activities" is defined in § (A)(2), a section which has not been challenged in this litigation).

nesses." *Id.* at 440. Despite the plaintiffs' relative lack of success in challenging Rule 52 as it applies to the erotic dancing they present in their cabarets, the plaintiffs were able to demonstrate a substantial likelihood that the challenged sections of Rule 52 are unconstitutionally overbroad, and that § (B)(7) is unconstitutionally vague as well as overbroad.[2] *Id.* at 441–44.

At a status conference conducted on January 31, 2000, the plaintiffs indicated that they did not need to submit any additional evidence to the Court prior to the rendering of a final judgment in this matter. Subsequently, the cabaret operators filed a "motion to make the preliminary injunction permanent based on the record as it now exists or, in the alternative, to set a trial date in the event defendants propose to offer additional evidence." In response, the defendants opposed the plaintiffs' request for a permanent injunction, and asked this Court to reconsider some of its prior rulings. The parties briefed the issues to be "reconsidered" and, later, addressed the import of the Supreme Court's recent decision in *City of Erie v. Pap's A.M.*, —— U.S. ——, 120 S.Ct. 1382, 146 L.Ed.2d 265 (2000). This Court addresses the parties' arguments below.

**2.** The plaintiffs have challenged the following portions of Rule 52:

> (A) Definitions as used in this Rule:
> (1) "Lewd activities" are those activities (including those which are electronically reproduced) that contain lustful, lascivious or lecherous behavior and includes, but is not limited to acts of, or acts that simulate, sexual intercourse, masturbation, sodomy, bestiality, or oral copulation.
> ....
> (3) "Nudity" is the showing (including electronically showing) of the human male or female genitals, pubic area or buttocks (or anus) with less than a fully opaque covering, the showing of the female breast with less than a fully opaque covering of any part of the nipple and/or areola, or the showing of the covered male genitals in a discernibly turgid state.
> (B) Prohibited activities: No permit holder, his agent, or employee shall knowingly or willfully allow in and upon his licensed permit premises any persons to:
> (1) Engage in any lewd ... activities;
> (2) Appear in a state of nudity;
> (3) Touch, fondle, or caress the genitals, pubic area, buttocks, or female breasts of any person;

## II. Discussion

### A. Justiciability

Once again, Director O'Connor and ODPS argue that there is no case or controversy before this Court because they have not been able to enforce Rule 52 against the plaintiffs and because state courts have not yet had an opportunity to interpret the regulation. The defendants raised identical arguments at the beginning of this litigation, and those arguments were squarely rejected. *See J.L. Spoons, Inc. v. Brown,* 40 F.Supp.2d 902, 905–07 (N.D.Ohio 1999).

The defendants cover no new territory in their recent pleadings; indeed, they merely restate the arguments they proffered previously. This Court sees no reason to reconsider its prior conclusions regarding either ripeness of the controversy, the plaintiffs' standing to bring this action, or the inapplicability of the abstention doctrine. Thus, for the reasons thoroughly explained in this Court's March 12, 1999 Memorandum and Order, this Court adheres to its conclusion that this case presents a live, justiciable controversy.[3] *See id.*

> ....
> (7) Commit improper conduct of any kind, type, or character that would offend the public's sense of decency, sobriety or good order.
> Ohio Admin.Code 4301:1–1–52 (1998) (capitalization omitted).

**3.** The defendants' briefs are permeated with arguments and assertions that are either contrary to law, or contrary to the facts of this case. Regarding justiciability, for example, the defendants invoke the principle that courts should avoid constitutional issues when the matter may be decided on non-constitutional grounds. This principle is irrelevant here; the claims in this case are solely constitutional in nature, and there are no non-constitutional grounds upon which the case could be resolved.

Similarly, in a request that is bizarre at best, the defendants ask this Court to certify the question of "how Rule 52 is to be applied" to the Ohio Supreme Court. The only type of question that a federal court may certify to a state's highest court is a question of *state* law. The only state claim in this case pertains to whether Rule 52 violates the free-speech provisions of the Ohio Constitution—a claim which necessarily is sub-

## B. Supreme Court's Decision in *City of Erie*

The United States Supreme Court recently reiterated that "nude dancing of the type at issue here is expressive conduct" falling "within the outer ambit" of the First Amendment. *See City of Erie v. Pap's A.M.*, —— U.S. ——, 120 S.Ct. 1382, 146 L.Ed.2d 265 (2000) (plurality opinion). Although, as in the earlier case of *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 111 S.Ct. 2456, 115 L.Ed.2d 504 (1991), the Supreme Court again failed to produce a majority rationale in upholding the City of Erie's public-nudity ordinance, five justices agreed that regulations aimed at the harmful secondary effects of public nudity (and, in particular, of adult entertainment establishments) are content—neutral provisions, which should be analyzed under the four-part test enunciated in *United States v. O'Brien*, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968). *See City of Erie*, 120 S.Ct. at 1402–03 (Souter, J., concurring in part and dissenting in part). Indeed, the *City of Erie* plurality largely employed the framework that Justice Souter had delineated in his prior concurrence in *Barnes.*[4] *See id.* at 1390–97.

The *City of Erie* decision does not alter in any material way either the analysis or the conclusions reached in this Court's preliminary injunction order. First, as just noted, *City of Erie* is thoroughly consistent with Justice Souter's concurrence in *Barnes*, which is the opinion this Court had relied upon when assessing the plaintiffs' as-applied challenge in this case. *See J.L. Spoons*, 190 F.R.D. at 438–40. Neither side to this litigation has offered a convincing reason to reconsider this Court's treatment of Rule 52 as a content-neutral regulation, and this Court's conclusion that only § (B)(7) fails the *O'Brien* test.

Second, and even more important, is the fact that *City of Erie* did not involve any overbreadth or vagueness claims. In contrast, the cabaret operators in this case have argued vociferously that Rule 52 is unconstitutionally overbroad and vague on its face. The Supreme Court's recent decision in *City of Erie* simply does not shed any meaningful light on the overbreadth and vagueness analyses that underpinned this Court's decision to grant the plaintiffs a preliminary injunction.

## C. Overbreadth

Director O'Connor and ODPS urge this Court to reconsider its finding that the challenged sections of Rule 52 are unconstitutionally overbroad. The recycled arguments that the defendants proffer in support of this request wholly lack merit.

As this Court explained in the preliminary injunction order, a government regulation is facially overbroad when there exists "a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the court." *City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 801, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984). To be unconstitutionally overbroad, a regulation's overbreadth "must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." *Broadrick v. Oklahoma*, 413 U.S. 601, 615, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973).

In *Triplett Grille, Inc. v. City of Akron*, 40 F.3d 129 (6th Cir.1994), the Sixth

---

sumed by resolution of the federal constitutional claim. *See City of Cleveland v. Trzebuckowski*, 85 Ohio St.3d 524, 709 N.E.2d 1148, 1152 (1999) (free-speech guarantees of Ohio Constitution "are no broader than those guaranteed by the First Amendment to the United States Constitution," and the First Amendment is "the proper basis" for interpretation of Section 11, Article I, of Ohio Constitution).

**4.** Justice Souter parted with the plurality in *City of Erie* because he concluded that the city had

not made the requisite evidentiary showing to demonstrate that the ordinance "is reasonably designed to mitigate real harms" under *O'Brien*. *City of Erie*, 120 S.Ct. at 1406–07 (Sourer, J., concurring in part and dissenting in part). Justice Souter candidly admitted that his "partial dissent rests on a demand for an evidentiary basis that [he] failed to make when [he] concurred in *Barnes*." *Id.* at 1405–06.

Circuit invalidated on overbreadth grounds an Akron ordinance that prohibited public displays of nudity and sexual conduct. *See id.* at 135–36. The Sixth Circuit reasoned that such a regulation sweeps in a substantial amount of protected speech when the regulation covers performances "with serious literary, artistic, or political value." *Id.* at 136. Because the Akron ordinance in *Triplett Grille* swept in a variety of artistic performances as well as "adult entertainment," the Sixth Circuit found the ordinance to be overbroad in violation of the First Amendment. *Id.* at 135–36.

In determining whether the cabaret operators were likely to prevail on the merits of their overbreadth claim, this Court found the holding of *Triplett Grille* to be directly on point. *See J.L. Spoons,* 190 F.R.D. at 441–43. Like the ordinance at issue in *Triplett Grille,* the challenged portions of Rule 52 prohibit a variety of protected expression falling well outside the realm of erotic dancing and other adult entertainment. *See id.* Moreover, regarding the reach of Rule 52, the plaintiffs produced compelling evidence that both mainstream and smaller performance venues possess liquor permits and allow audience members to consume alcohol while viewing performances. *See id.* at 442. Accordingly, this Court found Rule 52's illegitimate sweep to be quite substantial. *See id.* at 441–43.

Director O'Connor and ODPS fail to comprehend the key aspects of this Court's overbreadth ruling in their motion for reconsideration. They ignore the holding of *Triplett Grille,* and dismiss outright the plain sweep of the challenged portions of Rule 52.[5] Rather than attempting to distinguish *Triplett Grille,* the defendants rely on the unpublished decision of *Deja Vu v. Metro Gov't,* 1999 WL 55276 (6th Cir.1999) (unpublished) (per curiam), *cert. denied,* — U.S ——, 120 S.Ct. 1553, 146 L.Ed.2d 459 (2000). However, *Deja Vu* actually underscores the reasoning of *Triplett Grille* and the correctness of

the plaintiffs' position with regard to the impermissible overbreadth of Rule 52. The indecency statute at issue in *Deja Vu* was saved from an overbreadth challenge because, contrary to the ordinance involved in *Triplett Grille,* the statute specifically excluded from its reach any theatrical production that has serious artistic value. *See Deja Vu,* 1999 WL 55276, at *5. Director O'Connor and ODPS miss the crucial point that Rule 52, like the ordinance struck down in *Triplett Grille* and *unlike* the statute upheld in *Deja Vu,* contains no limitation or exclusion for artistic performances unassociated with the secondary effects of adult entertainment establishments. *See also Farkas v. Miller,* 151 F.3d 900, 905 (8th Cir.1998) (statute's explicit exception for theaters, concert halls and the like "saves it from being overbroad"). Moreover, Rule 52 is uniquely problematic because it prohibits "electronic" showings of nudity and sexual activities as well as live showings.

The remainder of the defendants' arguments regarding overbreadth are either inapposite or based on a flawed understanding of the record and/or applicable law. For example, the defendants cite to the United States Tax Code in support of their argument that "the mere fact that a statute may contain a number of possible combinations and scenarios left for interpretation does not, by itself, render the statute invalid on overbreadth grounds." Def. Motion for Reconsideration, at 9. How the Tax Code might involve expression protected by the First Amendment (or otherwise shed any real light on this case) is left for the Court to surmise. In addition, the defendants misconstrue this Court's clear assessment of certain issues in the preliminary injunction order, such as this Court's finding that "there is no binding judicial decision, administrative construction, or well-established practice to provide a limiting construction in this case." *J.L. Spoons,* 190 F.R.D. at 442 (citing *City of Lakewood v. Plain Dealer Publ'g Co.,* 486 U.S. 750, 770,

5. The defendants describe the plaintiffs' concerns regarding overbreadth as an exercise in paranoia, despite the fact that "[i]n this case, the Deputy Directory of ODPS admitted that a production of 'Old Calcutta' had been cited for violating the prior version of Rule 52." *J.L. Spoons,* 190 F.R.D. at 443.

108 S.Ct. 2138, 100 L.Ed.2d 771 (1988) (stating that any limiting construction must "be made explicit by textual incorporation, binding judicial or administrative construction, or well-established practice")). Despite this'unambiguous language, which reveals that this Court indeed considered the availability of a limiting construction, the defendants erroneously assert that the Court "ignored the general requirement that an attempt be made to 'save' the statute by any limiting interpretation or application that would pass scrutiny on constitutional grounds." Def. Motion for Reconsideration, at 14–15, n. 9.

Finally, ODPS and Director O'Connor argue that the challenged provisions of Rule 52 are not unconstitutionally overbroad because Rule 52 contains a scienter requirement, which prohibits only knowing and willful violations of the rule. There is little doubt that such a requirement of intent is necessary to avoid impermissible overbreadth. However, while the intent requirement is necessary, it is not itself sufficient to save a regulation from substantial overbreadth. In this case, it is evident that a liquor permit holder generally would know the nature and content of the performances that are being presented on the premises. To use only some examples from this Court's preliminary injunction order, a permit holder would know that "Hair" involves nudity; that a "rated R" film frequently contains simulated sexual behavior; and that a ballet or modern dance performance requires dancers to touch the clothed buttocks of other dancers. Thus, the intent requirement of Rule 52 does not prevent the rule from reaching a substantial amount of protected expression of which a permit holder would know.

In sum, the defendants offer no valid reason to reject the conclusions contained in the preliminary injunction order with respect to overbreadth. For the reasons stated in that prior order, and for the reasons stated above, this Court remains persuaded that §§ (A)(1), (A)(3), (B)(1) (as it pertains to "lewd" activities), (B)(2), (B)(3), and (B)(7) are unconstitutionally overbroad in violation of the First Amendment, and that § (B)(7) is unconstitutionally vague as well as overbroad.

Furthermore, this Court need not specifically analyze the constitutionality of Rule 52 under the Ohio Constitution, because it is well-established that the free-speech guarantees of the Ohio Constitution "are no broader than those guaranteed by the First Amendment to the United States Constitution," and that the First Amendment is "the proper basis" for interpretation of Article I, § II of the Ohio Constitution. *City of Cleveland v. Trzebuckowski*, 85 Ohio St.3d 524, 709 N.E.2d 1148, 1152 (1999).

### D. Severability of Unconstitutional Provisions

The final issue in this case pertains to the severability of the unconstitutional provisions of Rule 52. Severability is a question of state law. *See Leavitt v. Jane L.*, 518 U.S. 137, 139, 116 S.Ct. 2068, 135 L.Ed.2d 443 (1996). Although Rule 52 does not contain its own severability provision, Ohio Revised Code § 1.50 creates a presumption in favor of severance. *See* O.R.C. § 1.50. The plaintiffs do not dispute that the presumption of severability contained in § 1.50 applies to provisions of the Ohio Administrative Code as well as provisions of the Ohio Revised Code.

Under Ohio law, three factors are to be considered in determining whether unconstitutional provisions may be severed: (1) whether the constitutional and unconstitutional portions read and stand by themselves; (2) whether the unconstitutional portion is so connected with the whole "as to make it impossible to give effect to the apparent intention of the Legislature if the clause or part is stricken out"; and (3) whether severability would require the insertion of additional words or terms. *See State v. Hochhausler*, 76 Ohio St.3d 455, 668 N.E.2d 457, 466–67 (1996); *Women's Med. Prof'l Corp. v. Voinovich*, 130 F.3d 187, 202 (6th Cir.1997), *cert. denied*, 523 U.S. 1036, 118 S.Ct. 1347, 140 L.Ed.2d 496 (1998). A reviewing court may not rewrite a regulation or sever it in a manner that would fundamentally disrupt the statutory or administrative scheme. *Id.*

In issuing the preliminary injunction, this Court found that while particular phrases generally could not be severed from the sections in which they were contained, the unconstitutional sections themselves could be severed from the remainder of Rule 52. This Court remains convinced that it reached the correct result in the preliminary injunction order.

Thus, of all the challenged sections, only § (B)(1) contains words that properly may be severed from the section in which they are contained. Section (B)(1) prohibits both "lewd" and "disorderly" activities, and those two types of activities are defined in two separate sections that stand independently. *See* Ohio Admin.Code 4301:1–1–52, §§ (A)(1), (A)(2) (1998). The cabaret operators have not challenged the rule's ban on disorderly activities. It does not appear that severing the unconstitutional prohibition on "lewd" activities from § (B)(1) would either require the insertion of additional words or vitiate the drafters' intent to proscribe "disorderly" activities in that section. Therefore, this Court concludes that it is appropriate to strike the words "LEWD OR" from § (B)(1). The remainder of § (B)(1) continues to stand.

The other challenged sections of Rule 52— §§ (A)(1), (A)(3), (B)(2), (B)(3), and (B)(7)— fail in their respective entireties; nonetheless, they may be severed from the rest of Rule 52 without altering the meaning of, or otherwise disrupting, the remaining portions of the rule. Each of these sections reads and stands alone, and each may be severed from Rule 52 without requiring the insertion of additional words or terms. Furthermore, these sections are sufficiently distinct from the unchallenged portions of Rule 52 that striking them would not make it impossible to give effect to the regulators' intentions with respect to the remaining portions of the rule. Accordingly, this Court excises §§ (A)(1), (A)(3), (B)(2), (B)(3), and (B)(7) from Rule 52. Sections (A)(2), (B)(4), (B)(5), and (B)(6) remain intact (as does the portion of § (B)(1) pertaining to disorderly activities).

### III. Conclusion

For the foregoing reasons, and for the reasons stated in the preliminary injunction order, this Court:

(1) denies the defendants' motion for reconsideration;

(2) grants the plaintiffs' motion to make the preliminary injunction permanent;

(3) denies the plaintiffs' request to set a trial date as moot;

(4) declares the following portions of Rule 52 unconstitutional: §§ (A)(1), (A)(3), (B)(1) (in part), (B)(2), (B)(3), and (B)(7);

(5) severs and permanently enjoins the enforcement of §§ (A)(1), (A)(3), (B)(1) with regard to "lewd" activities, (B)(2), (B)(3), and (B)(7); and

(6) enters final judgment in favor of the plaintiffs.

This order is final and appealable.

IT IS SO ORDERED.