Jerrie **TURNER**, et al., Plaintiffs,

v.

**SOUTH–WESTERN CITY SCHOOL DISTRICT**, et al., Defendants.

No. C2–99–1229.

United States District Court,
S.D. Ohio,
Eastern Division.

Dec. 22, 1999.

Jack L. Moser, Adams, Rosenberg & Associates, Columbus, Ohio, Danny W. Bank, Columbus, Ohio, for plaintiffs.

Richard Wayne Ross, Means, Bichimer, Burkholder & Baker, Columbus, Ohio, for defendants.

MARBLEY, District Judge.

## I. *INTRODUCTION*

This case was originally brought before the Franklin County Court of Common Pleas by Stephen E. Koser, a high school student, and his mother Jerrie Turner, after Koser was expelled from Westland High School for bringing a look-alike gun to school and for disruptive behavior. The case was removed to this Court by the Defendant, South–Western City School District. Koser claims that his constitutional right to procedural due process was denied when he was suspended and expelled, and that the student handbook provision prohibiting look-alike guns is constitutionally vague and overbroad. This matter is presently before the Court on Plaintiffs' Motion for a Preliminary Injunction. For the following reasons, Plaintiffs' Motion is hereby **DENIED.**

## II. *FACTS*

The Plaintiff, Stephen E. Koser, is a seventeen year old student at Westland High School ("Westland"), in Galloway, Ohio. On September 23, 1999, Deputy Cooper, of the Franklin County Sheriff's Department, was patrolling Westland's student parking lot checking cars for parking permits. Cooper approached Koser's car to issue him a parking violation for not having a parking permit. After placing the citation on Koser's windshield, he saw a partially concealed gun protruding from under the front driver's side seat of Koser's car. The gun looked like a Smith & Wesson 9mm gun; it was silver in color and appeared to have a wood grain grip. The Deputy contacted the Assistant Principal's office to inform him that he had found the gun.

Assistant Principals Grube and McLaughlin, and Deputy Cooper located Koser in the high school library. The three officials escorted Koser to the principal's office, where Deputy Cooper conducted a pat-down of Koser. Deputy Cooper found a box of cigarettes and a pager on Koser's person. Deputy Cooper asked Koser for permission to search his car, which Koser granted. All four individuals, Grube, McLaughlin, Cooper and Koser, went to the high school parking lot where Koser's car was parked. Cooper opened Koser's car and examined the gun. The gun turned out to be a plastic toy gun that had a bright orange tip. The orange tip had been concealed from view.

When Koser was asked to return to the Assistant Principal's office, he became belligerent and hostile, and refused to return to school. Eventually, he was persuaded to return to the building, but on the walk back, he began to use profanity, was disruptive and started to make veiled threats. Upon returning to the principal's office, Koser sat in front of Assistant Principal Grube's desk with clenched fists and pounded on the arms of his chair. Koser also leaned on the desk, toward Grube.

During the time he spent in the office, Koser made threatening statements such

as: "this is how I solve my problems," "if I wanted to bring a real gun to school, I would have brought a gun and blown holes in this mother," "you're my problem and I get rid of my problems," and "every dog has his day and you'll get yours." To Deputy Cooper, Koser said, "if you take your gun and badge off, you want to get froggy, leap," which Cooper took as a direct threat and an attempt by Koser to instigate a fight.

At the informal hearing on September 23, 1999, Koser was given the opportunity to explain his side of what happened. Koser said that the car was his mother's and that the toy gun had been left in the back seat of her car by a neighborhood child. Koser said that the first time he saw the toy gun was when he was escorted to the car by Deputy Cooper and the Assistant Principals.

At the same hearing, Koser was given a "Notice of Intent to Suspend," which indicated that he was being suspended for: "look-a-like gun in students car," "student used profanity repeatedly and refused to calm down after repeated requests," "threats directed at school officials," and "student also had cigarettes and a pager in his possession." The notice also stated:

> You are hereby suspended 10 school days beginning 9/23/99 for the above-stated violation(s) of the adopted Code of Conduct and School Board Policy. You should return to school on 10/7/99. You have the right to appeal this suspension to the principal, to be granted a hearing on appeal, and to be represented in all appeal proceedings. If you wish to exercise the right of appeal, contact the principal's office immediately. If you fail to file an appeal within ten (10) days, you forfeit your right to appeal.

Koser refused to sign the notice.

Koser was also given a "Notice of Intended Expulsion" at the September 23,

1999, meeting. The reasons checked for Koser's potential expulsion were: "Disruption of Schools," and "Weapons/Dangerous Instruments." The notice also stated:

> You and your parents, guardian, custodian, or representative will have the opportunity to appear in person for a hearing to be held at 2:00 p.m. on 9/29/9[9] at Westland High School. You are not required to attend this meeting; however, it offers you the opportunity to challenge the reason(s) for the expulsion or explain your actions.

Koser also refused to sign this notice. Assistant Principal Grube contacted Jerrie Turner, Koser's mother, and she came to pick him up from school. Turner was given a copy of both notices at that time.

On September 24, 1999, Turner delivered a notice to school officials indicating that she was going to appeal her son's suspension. The suspension appeal hearing was held on September 29, 1999. Principal Voyles, Deputy Sheriff Cooper, and Assistants Principals McLaughlin and Grube attended the appeal. Turner stated that the car was hers and that the toy gun was left in the car by a child who lived in the neighborhood. Following the hearing, Principal Voyles upheld the suspension.

On September 30, 1999, Turner attended her son's pre-expulsion hearing.[1] Also in attendance were Assistant Principals Grube and McLaughlin, and Shawn Koser, Stephen's older brother. Following the hearing, it was recommended that Koser be expelled. On October 4, 1999, Superintendent Hamilton issued Koser's Expulsion Notice. By letter dated October 5, 1999, and received by the Superintendent's office on October 6, 1999, Turner filed a request to appeal the expulsion.

Dr. Rinehart sent Turner a letter, dated October 12, 1999, scheduling a hearing for October 18, 1999, to appeal Koser's expulsion.[2] The hearing was held by Robert B.

---

1. The hearing was originally scheduled for September 29, 1999, but was rescheduled to accommodate the appeal of Koser's suspen-

sion which was instead scheduled for that date.

2. Dr. Rinehart was the hearing officer as-

St. Clair, an independent hearing officer, on October 26, 1999. The hearing included cross-examination and arguments by counsel. By report dated October 29, 1999, St. Clair recommended to the South–Western City School Board that Koser be expelled. On November 8, 1999, the school board met by regular meeting and adopted St. Clair's recommendation to expel Koser.

On October 14, 1999, Defendant's counsel sent a letter to Turner outlining the terms for readmitting Koser to class. Koser would have to attend alternative school until January 18, 1999. Starting on January 18, 1999, Koser would have to attend Westland High School from approximately 9:00 a.m. to 3:00 p.m., then attend alternative high school from 3:00 p.m. until 5:00 p.m. Koser would also have to complete a one-half credit class in anger management. After talking to Koser's psychologist, Turner rejected the terms. Turner was concerned that Koser would have to attend classes from 9:00 a.m. to 5:15 p.m. starting on January 18, 2000. Turner did not think that Koser could have handled that type of school schedule. Since his expulsion, Koser has been working thirty-five hours per week at Kohl's Department Store.

Koser is prohibited from returning to class and from being on South–Western City School property until January 18, 2000.

### III. PRELIMINARY INJUNCTION STANDARD

A preliminary injunction is an extraordinary remedy which should only be granted if the movant carries his or her burden of persuasion. *Stenberg v. Cheker Oil Co.*, 573 F.2d 921, 925 (6th Cir.1978) (citations omitted); *Penetone Corp. v. Palchem, Inc.*, 627 F.Supp. 997, 1004 (N.D.Ohio 1985). To grant an injunction, the Court must consider: (1) whether there is a strong or substantial likelihood of success on the merits; (2) whether the movant has established irreparable harm;

(3) whether the issuance of a preliminary injunction would cause substantial harm to others; and (4) whether the public interest is served by the issuance of an injunction. *See, e.g., Washington v. Reno*, 35 F.3d 1093, 1099 (6th Cir.1994); *Keweenaw Bay Indian Community v. Michigan*, 11 F.3d 1341, 1348 (6th Cir.1993); *Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir. 1992); *Shell v. R.W. Sturge*, 850 F.Supp. 620, 632 (S.D.Ohio 1993) (citations omitted). The four elements are "[f]actors to be balanced, not prerequisites that must be met." *Shell*, 850 F.Supp. at 632 (citing *In re DeLorean Motor Co.*, 755 F.2d 1223, 1229 (6th Cir.1985)). *See also Dayton Area Visually Impaired Persons, Inc. v. Fisher*, 70 F.3d 1474, 1480 (6th Cir.1995).

In issuing a preliminary injunction, the first factor to consider is whether the Plaintiffs have a substantial likelihood of success on the merits. Here, the Plaintiffs have brought two claims in their Motion for a Preliminary Injunction. First, the Plaintiffs argue that their right to procedural due process under the Fourteenth Amendment to the United States Constitution was abrogated when Koser was suspended and expelled from high school. Secondly, the Plaintiffs argue that school handbook's prohibition on bringing a "look-alike gun" onto school property is constitutionally vague and overbroad. The Plaintiffs' claims will be examined, in turn, to determine the likelihood of success on the merits for each claim.

### IV. LIKELIHOOD OF SUCCESS ON THE MERITS

#### A. Procedural Due Process

The first issue is whether Koser is likely to succeed on his claim that his suspension and expulsion violated his right to procedural due process under the Fourteenth Amendment to the United States Constitution. Koser's suspension will be addressed separately from his expulsion as there are

signed to Koser's case. Rinehart's duties would have been to hear the appeal of Koser's expulsion; however, Koser was assigned an independent hearing officer to hear his expulsion appeal.

different procedural due process requirements for each action that the high school took.

### 1. *Ten Day Suspension.*

■ The Supreme Court has directly addressed the process due a student who is suspended from school for ten days or less. In *Goss v. Lopez*, 419 U.S. 565, 581, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975), the Court found that "[i]n connection with a suspension of 10 days or less, [ ] the student [should] be given oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story."

■ In addition, the Ohio legislature has established specific procedures that schools must follow before suspending a student from school. *See* OHIO REV.CODE § 3313.66(A).

No student shall be suspended unless prior to the suspension such superintendent or principal does both of the following: (1) Give the pupil written notice of the intention to suspend him and the reason for the intended suspension . . . and (2) provide the pupil an opportunity to appear at an informal hearing before the principal, assistant principal, superintendent, or superintendent's designee and challenge the reason for the intended suspension or otherwise to explain his actions.

OHIO REV.CODE § 3313.66(A)(1)–(2).

Furthermore:

(D) The superintendent . . . *within one school day* after the time of a pupil's expulsion or suspension, shall notify in writing the parent . . . and the treasurer of the board of education of the expulsion or suspension. The notice shall include the reasons for the expulsion or suspension, notification of the right of the pupil or his parent, guardian, or custodian to appeal the expulsion or suspension to the board of education. . . .

(E) A pupil or his parent . . . may appeal the expulsion or suspension by the superintendent . . . to the board of education or to its designee.

OHIO REV.CODE § 3313.66(D)–(E) (emphasis added).

Here, Koser's suspension meets the procedural due process required for a suspension established by *Goss* and section 3313.66(A) of the Ohio Revised Code, which mirrors *Goss*. Koser was given written notice of the school's intent to suspend him for ten days. The notice documented the reasons for Koser's suspension, including, "look-a-like gun in students car," "student used profanity repeatedly and refused to calm down after repeated requests," "threats directed at school officials," and "student also had cigarettes and a pager in his possession." Koser refused to sign the notice. Following the September 23, 1999, search of Koser's car, Koser was taken to the Assistant Principal's office where he was given an opportunity to explain his side of the story. Koser told Grube that the car belonged to Koser's mother. Koser also explained that a child from the neighborhood was playing in the back seat of his mother's car and had left the toy gun there. Koser said that he did not know the toy gun was in the car until it was searched by Officer Cooper.

The officials of Westland High School also met the requirements established by section 3313.66(D)–(E) the Ohio Revised Code when they suspended Koser. Turner was called from the Assistant Principal's office after Koser was suspended. When Turner arrived at the school to pick up her son, she was given a copy of the Notice of Intent to Suspend, which included the reasons for Koser's suspension. The notice also informed Koser and Turner that they had a "[r]ight to appeal this suspension to the principal, to be granted a hearing on appeal, and to be represented in all appeal proceedings. If you wish to exercise the right of appeal, contact the principal's office immediately." Turner obviously understood her right to appeal Koser's suspension, as the next day, on September 24, 1999, she sent a letter to

Principal Voyles appealing the suspension of Koser. On September 29, 1999, Principal Voyles conducted a suspension appeal hearing. *See* OHIO REV.CODE § 3313.66(D). Koser's constitutional procedural due process rights were preserved and the Ohio Revised Code requirements were met when school officials suspended Koser for ten days.

### 2. *Expulsion.*

*Goss* did not directly address what process is due for suspension of more than ten days. The Court, however, did recognize that suspensions longer than ten days require "more formal procedures," *Goss,* 419 U.S. at 584, 95 S.Ct. 729. In *Newsome v. Batavia Local Sch. Dist.,* 842 F.2d 920, 921 (6th Cir.1988), where the Plaintiff was expelled from school for the remainder of the fall semester for allegedly possessing and attempting to sell marijuana, the Court noted in dicta that "[a] student faced with expulsion has the right to a pre-expulsion hearing before an impartial trier-of-fact—he does not have the right to a full-blown administrative appellate process." *Id.* at 927 (citing *Brewer v. Austin Indep. Sch. Dist.,* 779 F.2d 260 (5th Cir.1985)); *see also Hall v. Medical College of Ohio at Toledo,* 742 F.2d 299, 309 (6th Cir.1984) (citing with favor *Dixon v. Alabama State Bd. of Educ.,* 294 F.2d 150, 158–59 (5th Cir.1961), which held that a hearing which gives school authorities an opportunity to hear both sides is required in expulsion cases, but that a full-dress judicial hearing is not required).

■ Following *Goss* and *Newsome,* the Sixth Circuit held in *Ashiegbu v. Williams,* No. 97–3173, 1997 WL 720477 at *1 (6th Cir. Nov. 12, 1997), that a student faced with expulsion for disciplinary reasons must be given the procedural requirements established by *Goss,* and in addition, "[t]he right to a pre-expulsion hearing before an impartial trier of fact." *Id.* at *3 (citing *Newsome,* 842 F.2d at 927).

■ Section 3313.66(B) of the Ohio Revised Code establishes the procedures to be used in student expulsions, which are:

(4) No pupil shall be expelled under division (B)(1), (2), or (3) of this section unless, prior to his expulsion, the superintendent does both of the following:

(a) Gives the pupil and his parent, guardian, or custodian written notice of the intention to expel the pupil;

(b) Provides the pupil and his parent . . . an opportunity to appear in person before the superintendent or his designee . . . to challenge the reason for the intended expulsion or otherwise to explain the pupil's actions.

The notice required in this division shall include the reasons for the expulsion, notification of the opportunity of the pupil and his parent . . . to appear before the superintendent or his designee to challenge the reasons for the intended expulsion or otherwise to explain the pupil's actions, and notification of the time and place to appear. *The time to appear shall not be earlier than three nor later than five school days after the notice is given,* unless the superintendent grants an extension of time at the request of pupil or parent. . . .

OHIO REV.CODE § 3313.66(B)(4)(a)–(b) (emphasis added).[3]

In this case, Westland High School officials gave Koser the process that was due prior to expelling him. First, as established, the requirements of *Goss* were met when Koser was suspended from school, and therefore, since the expulsion was based on the same conduct, those requirements were also met when Koser was expelled. Koser was given an opportunity to be heard and to explain his version of the events. Koser was also given written "Notice of Intended Expulsion." That notice indicated that Koser would have the opportunity for a hearing on September 29, 1999, at Westland High School. The notice gave the reasons for Koser's possible

---

**3.** In addition, OHIO REVISED CODE § 3313.66(D)–(E) apply to expulsions.

expulsion which included: "Disruption of Schools," and "Weapons/Dangerous Instruments."

The next issue is whether Koser's expulsion satisfied the additional due process requirements as established by *Newsome* and *Ashiegbu* which include a pre-expulsion hearing before an independent trier of fact. Koser's expulsion hearing was held on September 30, 1999, at Westland High School. Present at the hearing were Assistant Principals Grube and McLaughlin, Shawn Koser, Stephen's older brother, and Koser's mother. Assistant Principal McLaughlin presided over the pre-expulsion hearing.[4] Koser's pre-expulsion hearing satisfied *Newsome*'s requirement, that there should be a hearing and that it should be held in front of an independent trier of fact. Under the circumstances of this case, the Court finds that Koser was accorded his due process rights pursuant to the United States Constitution prior to his expulsion from Westland High School.

Koser's expulsion also met the more stringent requirements of the Ohio Revised Code. First, Koser was given written notice of the school's intent to expel him. *See* OHIO REV.CODE § 3313.66(B)(4)(a). Second, Koser and his mother had an opportunity to appear before Assistant Principal McLaughlin to challenge the reasons for his expulsion. *See* OHIO REV.CODE § 3313.66(B)(4)(b). Koser was given notice of the reasons for his potential expulsion, and the notice indicated that Turner and/or Koser could appear before the superintendent's designee to challenge the reasons for Koser's expulsion. *See* OHIO REV.CODE § 3313.66(B)(4)(b). The time set

for the hearing also met the requirements established by the Code. The pre-expulsion hearing "shall not be earlier than three nor later than five school days after the notice is given...." OHIO REV.CODE § 3313.66(B)(4)(b). Here, Koser was given notice on September 23, 1999. The hearing was originally set for September 29, 1999, but was rescheduled for September 30, 1999 to accommodate the Plaintiff's appeal of his suspension. Three school days after Thursday, September 23, 1999, would have been September 28, 1999; five days after notice was given would have been September 30, 1999.[5] Koser's pre-expulsion hearing, which was held on September 30, 1999, fell within the time requirement established by section 3313.66(B)(4)(b) of the Ohio Revised Code.

Westland High School officials also met the requirements of section 3313.66(D) of the Ohio Revised Code. Following the pre-expulsion hearing, on Thursday, September 30, 1999, it was recommended that Koser be expelled.[6] Ohio statutes require parental notice within one school day after the pupil's pre-expulsion hearing. *See* OHIO REV.CODE § 3313.66(D). On Monday October 4, 1999, Superintendent Hamilton issued an expulsion notice and mailed it to Turner. Although the notice may have been one day late, this fact, in itself, is not a violation of the statute. *See Stuble v. Board of Educ. of the Cuyahoga Valley Joint Vocational Sch. Dist.*, No. 44412, 1982 WL 5953 at *5 (Ohio Ct.App. Oct. 7, 1982) (finding that "[w]here delay by a public official with respect to the precise time in which a statutory act is performed does not affect the rights of the parties

---

**4.** In *Newsome,* the court noted that if the student had shown that the school officials had pre-existing animosity toward him that they would not have been permitted to preside over the pre-expulsion hearing. 842 F.2d at 926–27. Koser and Turner did not make such an assertion against Westland School officials. Assistant Principal McLaughlin was present during the September 23, 1999, search of Koser's car, and was present as a witness during Koser's suspension hearing. However, McLaughlin maintained his impartiality as he did not make the

decision to suspend Koser, nor did he make the decision to issue the pre-expulsion notice.

**5.** Ohio statutes also provide that the superintendent may grant an "extension of time at the request of the pupil or his parent ..." OHIO REV.CODE § 3313.66(4)(b). Such an extension was given in this case to accommodate Koser's appeal of his suspension.

**6.** According to Turner's letter to Dr. Rinehart, the expulsion hearing took place on Friday October 1, 1999.

involved, that technical defect does not invalidate the officials subsequent action.") (citations omitted); *The State v. Board of Educ. of Hamilton City Sch. Dist.*, 20 Ohio App.2d 154, 252 N.E.2d 318 (1969). In addition, as required by the Code, the notice gave the reasons for the expulsion: "[d]isruption and being in possession of a weapon/look-alike." *See* OHIO REV.CODE § 3313.66(D). The notice also stated, "I wish to advise you that according to the law the parent has the right to appeal this action within ten (10) days from the date of this letter. If you wish to do this, contact Dr. Rinehart in this office." *See* OHIO REV.CODE § 3313.66(D).

By letter dated October 5, 1999, Turner and her attorney informed Dr. Rinehart that she wished to appeal Koser's suspension. By letter dated October 12, 1999, Dr. Rinehart set an expulsion appeal hearing for October 18, 1999. *See* OHIO REV. CODE § 3313.66(E). The hearing was held by the board's designee, Robert B. St. Clair, an independent hearing officer, on October 26, 1999. The hearing included cross-examination and arguments by counsel. By report dated October 29, 1999, St. Clair recommended to the South–Western City School Board that Koser be expelled. On November 8, 1999, the School Board met by regular meeting and adopted St. Clair's recommendation. *See* OHIO REV. CODE § 3313.66(E).

The Court finds that Westland High School officials met the detailed requirements of the Ohio Revised Code when they expelled Koser from school until January 18, 2000. Based on the Court's finding that Koser was given the process due in both his suspension and expulsion and that the applicable Ohio Revised Code provi-sions were met, the Court finds that there is little likelihood of success on the merits on the Plaintiffs' claim that his right to procedural due process under the Fourteenth Amendment of the United States Constitution was violated when he was suspended and expelled from school.

### B. Overbreath Doctrine

The Plaintiff argues that the "Weapons and Dangerous Instruments," provision of student handbook is overbroad. That provision provides: "[a] student shall not possess, handle, or transmit any object that can reasonably be considered a weapon. Weapons include any type of ... look-alike gun ... This guideline applies: 1. On the school grounds during and before and after school hours...." Specifically, the Plaintiff takes issue with the language "look-alike gun," and with the fact that the handbook does not have a scienter requirement for possession of a weapon.

There are two steps in analyzing a constitutional claim of overbreath.[7] "The first step is to 'determine whether the regulation reaches a substantial amount of constitutionally protected speech.' " *Dambrot v. Central Michigan Univ.*, 55 F.3d 1177, 1182 (6th Cir.1995); *Triplett Grille, Inc. v. City of Akron*, 40 F.3d 129, 135 (6th Cir.1994).[8] Under this step, "[a] statute is unconstitutional on its face on overbreath grounds if there is 'a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the court....' " *Dambrot*, 55 F.3d at 1182 (quoting *Members of City Council v. Taxpayers for Vincent*, 466 U.S. 789, 801, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984)). The second step is to determine whether

---

7. In count four of his Complaint, the Plaintiff appears to combine several concepts—the overbreath doctrine, void for vagueness, due process requirements under the Fifth and Fourteenth Amendments, the Equal Protection clause of the Fourteenth Amendment, and substantive due process. From oral argument, it appears that the Plaintiff is simply arguing that the language violates the overbreath doctrine which includes both protec-tion of speech and also includes notice and due process requirements based on the Fifth and Fourteenth Amendments of the United States Constitution.

8. Typically, overbreath is an exception to the doctrine of standing for First Amendment claims that allows a plaintiff to facially attack a statute. *See Triplett Grille, Inc. v. City of Akron*, 40 F.3d 129, 135 (6th Cir.1994).

the statute is " 'substantially overbroad and constitutionally invalid under the void for vagueness doctrine.' " *Dambrot*, 55 F.3d at 1183 (quoting *Leonardson v. City of East Lansing*, 896 F.2d 190, 195–96 (6th Cir.1990)).

◼ The Plaintiffs argue that the prohibition against bringing a look-alike gun onto school premises implicates First Amendment rights, as the provision could possibly prohibit bringing pictures of weapons in magazines and books to school, and also prohibit props in student dramas. The Plaintiffs' argument lacks merit. Here, it is unclear how a prohibition against transporting a "look-alike gun" onto school premises implicates any free speech concerns—as it is neither speech nor expression that is regulated, but conduct. Furthermore, the handbook language prohibits the "possess[ion], hand[ling] or transmit[ting] of any object that can reasonably be considered to be a weapon." A picture in a magazine or book is not an "object" and hardly could be considered a weapon. The student handbook which prohibits specific conduct implicates no First Amendment rights.

◼ The thrust of Plaintiffs' argument lies in the second step. The void for vagueness doctrine has its foundation in the due process clause of the Fifth Amendment to the Constitution. *Columbia Natural Resources, Inc. v. Tatum*, 58 F.3d 1101, 1104 (6th Cir.1995). As the Court noted in *Leonardson* :

> Vagueness may take two forms, both of which result in a denial of due process. A vague ordinance denies fair notice of the standard of conduct to which a citizen is held accountable. At the same time an ordinance is void for vagueness if it is an unrestricted delegation of power, which in practice leaves the definition of its terms to law enforcement officers, and thereby invites arbitrary, discriminatory and overzealous enforcement.

896 F.2d at 196 (citation omitted). Essentially, there must be fair notice and there

must not be an unrestricted delegation of power. *Dambrot*, 55 F.3d at 1184.

◼ Under the fair notice requirement, "[a]n ordinance is void for vagueness if a person or ordinary intelligence cannot reasonably interpret what is prohibited." *Deja Vu v. Metro Gov't (In re State of Tennessee Pub. Indecency Statute)*, No. 96–6512, 1999 WL 55276 at *4 (6th Cir. Jan. 13, 1999) (citing *Grayned v. City of Rockford*, 408 U.S. 104, 108, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972)). *See also Connally v. General Const. Co.*, 269 U.S. 385, 391, 46 S.Ct. 126, 70 L.Ed. 322 (1926) (finding that for a statute to be vague, it must use "terms so vague that men of common intelligence must necessarily guess at its common meaning."). "[T]he statute need not define with mathematical precision the conduct forbidden." *Deja Vu*, 1999 WL 55276 at *4 (citing *Columbia Natural Resources*, 58 F.3d at 1108.)

◼ The second half of the test encompasses a notice requirement to those who may enforce the law, including judges, police officers, and juries. *Columbia Natural Resources*, 58 F.3d at 1105. Here, the law must be "precise enough to void 'involving so many factors of varying effect that neither the person to decide in advance nor the jury after the fact can safely and certainly judge the result.' " *Id.* at 1105 (citing *Cline v. Frink Dairy Co.*, 274 U.S. 445, 465, 47 S.Ct. 681, 71 L.Ed. 1146 (1927)).

◼ Plaintiffs argue that "look-alike" is undefinable, ambiguous and vague. The Plaintiffs' argument fails. Students at Westland High School are on notice of what conduct is prohibited. In unambiguous terms, the handbook prohibits the possession, transmission or handling of any object that looks like a gun, or could "reasonably be considered to be a weapon." An individual of common intelligence can glean from reading the handbook what conduct is prohibited. Based on this, the Court concludes that the relevant portion of the student handbook is not vague.[9]

---

9. Koser acknowledged receiving a copy of the handbook.

Additionally, the handbook does not provide for an unrestricted delegation of power to school officials, since under the look-alike provision of the school handbook, school officials can only discipline students for doing precisely what the handbook prohibits. Because of the specificity of the language as to what is prohibited, there is no danger that school officials will interpret the provision arbitrarily. Sanctions will only be imposed upon those students possessing, *inter alia,* objects which look like guns. Since guns are clearly definable, objects which look like guns are as easily definable.

Typically, overbreath refers to state and federal criminal laws. And, although there are many comparisons between a criminal code and a school handbook, the Supreme Court has held that "[g]iven the school's need to be able to impose disciplinary sanctions for a wide range of unanticipated conduct disruptive of the educational process, the school disciplinary rules need not be as detailed as a criminal code which imposes criminal sanctions." *Bethel Sch. Dist. v. Fraser,* 478 U.S. 675, 686, 106 S.Ct. 3159, 92 L.Ed.2d 549 (1986). Following the guidelines established by the Supreme Court in *Fraser,* the handbook need not be as detailed as a criminal code.

█ Even if the Court were to find that this portion of the student handbook violates the Plaintiffs' First Amendment rights, Koser's suspension and expulsion stand independently of his bringing a toy gun to school. At the preliminary injunction hearing, Assistant Principal Grube testified that Koser probably would not have been expelled for simply bringing the toy gun to school, but that Koser's disruptive and threatening behavior caused the ten day suspension to rise to an expellable offense. Certainly, Koser was on notice that profanity and abusive language directed at teachers and school employees and disruption of class were expellable offenses. Based on this, the Court finds that the Plaintiffs have no likelihood of success on the merits of their claim that the student handbook is either vague or overbroad or both.

█ As for the Plaintiffs' argument that the handbook lacks a scienter requirement, given strict liability crimes, there is no constitutional requirement that school handbooks, or criminal statutes for that matter, have as one of their elements actual knowledge. And even if the Court finds that knowledge must be an element of student possession of a gun, the Court finds it incredulous that Koser did not "know" that there was a toy gun lying partially exposed under the front driver's seat of the car that he drove to school that morning.

## V. *IRREPARABLE INJURY*

█ The second element the Court needs to address is whether the Plaintiffs have demonstrated irreparable injury. In their Complaint, the Plaintiffs allege that Koser's irreparable injuries are that he cannot graduate in the spring, that he cannot further his academic career, and that he cannot attend a secondary institution next year. However, the Court find that Koser's injuries were not irreparable.

At the time of his suspension, Koser was given an opportunity to further his academic career, graduate in the spring and possibly attend a secondary institution next year. The plan provided by the school would have had Koser attending an alternative school for two hours a day until January 18, 2000. On January 18, 2000, Koser would have attended Westland High School from approximately 9:00 a.m. to 3:00 p.m. and then would have attended an alternative high school from 3:00 p.m. until 5:00 p.m. Koser would have also had to have completed a one-half credit class in anger management. This plan would have allowed Koser to graduate on time.

Turner rejected these terms after talking to Koser's psychologist; however, Koser's psychologist did not testify in this case. The Court must rely on Turner's assertion that Koser could not have han-

dled attending classes from 9:00 a.m. to 5:15 p.m. The Court views this assertion inconsistent with the fact that Koser has been working thirty-five hours a week for Kohl's Department Store since he was expelled. Given that Koser had an alternative to not graduating in the spring, the Court finds that he did not suffer irreparable injury.

## VI. SUBSTANTIAL HARM TO OTHERS AND PUBLIC INTEREST

 The third and fourth factors the Court must consider involve balancing the harm to others against the public interest in issuing an injunction. The Plaintiffs argue that the issuance of a preliminary injunction would not cause substantial harm to others in that it would allow the school to abide by compulsory attendance laws, provide education to children in the South–Western City School district, and allow the rules and regulations of Ohio schools to be followed. The Plaintiffs also argue that the public interest will be served in that the issuance of a preliminary injunction will avoid willful, unreasonable, and malicious expulsions within the school systems of Ohio, and will prevent the bad faith expulsions of students.

The Plaintiffs' arguments are not well taken. The Court finds the contrary to be the case. The public interest will be served if our children are allowed to attend safe schools—free from guns, disruption and profanity. The public interest will be served if school officials are permitted to regulate conduct which relates to school safety and discipline; to ensure the safety of the student body. It is in the interest of all students that weapons not be allowed to be brought into school. School officials should not be required to perform a detailed analysis to determine if a student's gun is real or fake. Furthermore, school officials should be allowed to complete their duties free from abusive behavior and from threats of violence from students.

The Court concludes that the public interest will not be served in issuing an injunction. The public interest is served by maintaining safe schools, by ensuring discipline and by the abeyance of abusive student behavior.

## VII. CONCLUSION

The Court finds that there is no basis for the issuance of a preliminary injunction. The Plaintiffs' Motion for a Preliminary Injunction is **DENIED**.

**IT IS SO ORDERED.**