RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 05a0368p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

HERBERT ODLE, d/b/a SPORTS CLUB, INC.; SHERILL
DOUGLAS; JENIFER COSIMANO; and JANE DOES I and
II,

　　　　　　　　　　*Plaintiffs-Appellants,*

　　　　　*v.*

DECATUR COUNTY, TENNESSEE; the DECATUR
COUNTY COMMISSION; and the DECATUR COUNTY
ADULT-ORIENTED ESTABLISHMENT BOARD,
　　　　　　　　　　　*Defendants-Appellees,*

THE STATE OF TENNESSEE,
　　　　　　　*Intervenor-Defendant-Appellee.*

No. 03-6532

---

Appeal from the United States District Court
for the Western District of Tennessee at Jackson.
No. 02-01278—James D. Todd, Chief District Judge.

Argued: December 3, 2004

Decided and Filed: August 26, 2005

Before: SILER and CLAY, Circuit Judges; BERTELSMAN, District Judge.[*]

---

## COUNSEL

**ARGUED:** Lloyd R. Tatum, TATUM & TATUM, Henderson, Tennessee, for Appellants. Steven
A. Hart, OFFICE OF THE ATTORNEY GENERAL, Nashville, Tennessee, for Appellees.
**ON BRIEF:** Lloyd R. Tatum, TATUM & TATUM, Henderson, Tennessee, for Appellants. Steven
A. Hart, OFFICE OF THE ATTORNEY GENERAL, Nashville, Tennessee, for Appellees.

---

[*]The Honorable William O. Bertelsman, United States District Judge for the Eastern District of Kentucky,
sitting by designation.

---

**OPINION**

---

CLAY, Circuit Judge.  Herbert Odle and four dancers at his adult business (collectively "Plaintiffs") appeal the district court's grant of summary judgment in favor of Defendants Decatur County, Tennessee (the "county" or "Decatur County"), the Decatur County Commission (the "Commission"), the Decatur County Adult-Oriented Establishment Board (the "Board") and Intervenor-Defendant the State of Tennessee.[1]  Plaintiffs assert that on its face Tennessee's Adult-Oriented Establishment Registration Act, Tenn. Code Ann. §§ 7-51-1101 *et seq.* (the "Act"), amounts to an unconstitutional prior restraint on protected expression.  They also assert that a related county ordinance is overbroad and, even if not overbroad, includes substantive regulations that violate the First Amendment.  After hearing oral argument, we held the case in abeyance pending the release of the *en banc* Court's decision in *Deja Vu of Cincinnati, L.L.C. v. The Union Township Bd. of Trs.*, 411 F.3d 777 (6th Cir. June 21, 2005), a decision that bears on Plaintiffs' prior restraint claim.  We now **AFFIRM** in part and **REVERSE** in part.

**I. BACKGROUND**

In April 2000, Plaintiff Herbert Odle began operating Sports Club, a business where nude and semi-nude dancing is presented for entertainment and beer is sold.  Sports Club is located in a rural portion of Decatur County, Tennessee.  Plaintiffs Jenifer Cosimano and Sherill Douglas are dancers employed by Sports Club; as are Plaintiffs Jane Doe I and II.

On May 22, 2000, the Decatur County Commission adopted for local effect the Tennessee Adult-Oriented Establishment Registration Act, Tenn. Code Ann. §§ 7-51-1101 *et seq.*, and pursuant to it, established the Decatur County Adult-Oriented Establishment Board.  In addition, the Commission passed an ordinance (the "ordinance") prohibiting nudity and sexually suggestive conduct at a wide range of public places where alcohol is sold, served, or consumed.  The Act requires all operators of "adult-oriented establishments," which Sports Club is conceded to be, to obtain licenses from the Board.  The Act also regulates the entertainment offered at adult establishments. Establishments in existence at the time the Act was adopted are afforded a 120-day grace period during which to apply for a license and pursue judicial review should the license be denied.

On July 11, 2002, the Board had its first meeting and determined that the 120-day grace period for establishments already in existence would begin on that day.  On July 19, 2002, the Decatur County Attorney informed Odle by letter that the county would seek to enforce the licensing provision against him if he had not obtained a license within 120 days of July 11, 2002, i.e., by November 8, 2002.  Odle did not and has not applied for a license from the Board.  Instead, on November 7, 2002, he and his co-plaintiffs filed a complaint in the Western District of Tennessee, naming the county, the Commission, and the Board as defendants.  The complaint alleged a number of claims, only some of which are on appeal and at least one of which was deemed waived at the summary judgment stage for failure to present a discernable argument.  The claims on appeal are as follows: that the Act's licensing scheme amounts to an unconstitutional prior restraint on protected expression; that unspecified substantive provisions of the Act would infringe on Plaintiffs' freedom of expression; and that the ordinance is unconstitutionally overbroad or alternatively includes substantive provisions that would violate the First Amendment if applied to adult-oriented establishments.  Plaintiffs sought a declaratory judgment to the effect that the Act and ordinance are

---

[1]Because these defendants jointly filed one brief for this appeal, we refer to them throughout this opinion as "Defendants," even though certain of Plaintiffs' claims may not implicate each defendant.

unconstitutional.  The relief requested was a temporary restraining order barring enforcement of the Act and the ordinance and, ultimately, permanent injunctive relief against enforcement of both.

On December 3, 2002, the district court issued a temporary restraining order, by mutual consent of the parties, precluding enforcement of the Act and the ordinance for 90 days, or until the court ruled on the motion for a preliminary injunction.  On February 3, 2003, the court granted Defendant State of Tennessee's motion to intervene to defend the constitutionality of the Act. Plaintiffs filed an amended complaint on June 17, 2003, raising claims that are not at issue in this appeal.

During July and August 2003, the parties engaged in discovery.  The parties then filed cross-motions for summary judgment, with Plaintiffs renewing their request for permanent injunctions against enforcement of the Act and ordinance.  Another temporary restraining order issued on September 2, 2003, by consent of the parties.  On October 14, 2003, the court granted Defendants' motion for summary judgment, finding each of Plaintiffs' constitutional challenges to the Act and ordinance unpersuasive; judgment was entered on October 20, 2003.  Plaintiffs timely filed a notice of appeal on November 13, 2003 and the next day the district court denied their motion for a stay pending appeal.  A motions panel of this Court denied Plaintiffs' motion for a stay of enforcement of the Act and ordinance on March 19, 2004.  The Act and ordinance became enforceable on that day, so we may assume Plaintiffs are not operating Sports Club, at least not as an adult-oriented establishment.

## II.  STANDARD OF REVIEW

We review a district court's grant of summary judgment *de novo*.  *Kalamazoo Acquisitions, L.L.C. v. Westfield Insurance Co., Inc.*, 395 F.3d 338, 341 (6th Cir. 2005); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1048 (6th Cir. 2001).  Summary judgment shall be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  Because Plaintiffs present facial challenges to the Act and a related ordinance, the resolution of this appeal does not depend on the resolution of any factual disputes but rather on questions of statutory interpretation and First Amendment jurisprudence, i.e., questions of law.  Finally, because this case was before the district court on cross motions for summary judgment, we accompany our holding in favor of Plaintiffs on their overbreadth claim (*see* discussion *infra*) with the instruction that the district court enter judgment in their favor on that claim, which in this case amounts to the issuance of an injunction permanently enjoining enforcement of the ordinance. *See Kalamazoo Acquisitions*, 395 F.3d at 342, 345; *Relford v. Lexington-Fayette Urban County Gov't*, 390 F.3d 452, 456-57 (6th Cir. 2004).

## III.  DISCUSSION

### A.      Prior Restraint Claim

Plaintiffs, not having applied for a license, present a facial challenge to the Act's licensing scheme.[2]  This is a colorable claim at least in theory because while it is not preferred, erotic entertainment is firmly within the scope of expression protected under the First Amendment.  *City of Erie v. Pap's A.M.*, 529 U.S. 277, 289 (2000) (plurality opinion); *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 566 (1991) (plurality opinion); *Sable Communications of Ca. v. FCC*, 492 U.S. 115, 126 (1989).  Under the Act, an "adult-oriented establishment" must first obtain a license in order to

---

[2]Plaintiffs have standing to bring such a challenge.  *See FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 223-24 (1990) (plurality opinion); *Freedman v. Maryland*, 380 U.S. 51, 56 (1965); *Nightclubs, Inc. v. City of Paducah*, 202 F.3d 884, 888-89 (6th Cir. 2000).

legally do business.  Consequently, the Act's licensing scheme constitutes a prior restraint on protected expression.  *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 225 (1990) (plurality opinion); *Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 554 (1975); *Deja Vu of Nashville, Inc. v. Metropolitan Gov't of Nashville & Davidson County*, 274 F.3d 377, 400 (6th Cir. 2001).  Because prior restraints are not unconstitutional *per se*, the question is whether the prior restraint at issue in this case passes constitutional muster.  *Southeastern Promotions*, 420 U.S. at 558; *Nightclubs, Inc. v. City of Paducah*, 202 F.3d 884, 889 (6th Cir. 2000).

The Supreme Court has long required prior restraint licensing schemes to guarantee applicants a prompt final judicial decision on the merits of a license denial and preservation of the status quo while an application or judicial review of a license denial is pending.  *Freedman v. Maryland*, 380 U.S. 51, 58 (1965); *FW/PBS, Inc.*, 493 U.S. at 229-30; *City of Littleton v. Z.J. Gifts D-4, LLC*, 541 U.S. 774, 779-80 (2004).  In the seminal *Freedman* decision, the Supreme Court suggested that a licensing scheme must place the burden of proof as to whether an applicant's form of expression is protected on the government.  380 U.S. at 58.  However, it now appears that prompt judicial review and preservation of the status quo are the only constitutionally indispensable procedural safeguards.  *FW/PBS, Inc.*, 493 U.S. at 228;  *Deja Vu of Nashville*, 274 F.3d at 400-401; *Nightclubs*, 202 F.3d at 889-90.

Under the Act, all operators of "adult-oriented establishments" and entertainers employed by such establishments must obtain licenses from the Board.  *See* Tenn. Code Ann. §§ 7-51-1104, 1105.  Applications are reviewed by the Board according to "reasonably objective, nondiscretionary criteria unrelated to [expressive] content,"[3] in accordance with the Supreme Court's latest pronouncement on licensing.  *See Littleton*, 541 U.S. at 783.  In any event, Plaintiffs do not contest the validity of the criteria for granting or denying license applications; rather, they assert that the Act does not afford prompt judicial review of adverse licensing decisions.  In addition, Plaintiffs summarily assert that even to the extent judicial review is available, the Act does not preserve the status quo while such review is pending.  Plaintiffs' arguments are not persuasive; on its face, the Act provides for prompt judicial review and ensures preservation of the status quo until a final judicial determination is made.  We return to the status quo issue after discussing why the Act ensures prompt judicial review of license denials.

Under the Act, the first review of a license application may be performed by the county Sheriff's department or the Board itself but in any event must be completed no later than 20 days after the application is filed.  Tenn. Code Ann. § 7-51-1106(4).  The Board must notify the applicant within 10 days thereafter whether the application is granted, denied, or held for further investigation. § 1105(c).  If held for further investigation, such investigation may not exceed an additional 30 days. *Id*.  If an application is denied, the chair of the Board must notify the applicant of the reasons for the denial.  The applicant has 10 days from receipt of the notification to make a written request for a public hearing before the Board, which hearing must occur within 15 days of receipt of the applicant's request and must conclude with a final Board decision.  Tenn. Code Ann. § 7-51-1110(b).  At the hearing, the applicant may present evidence challenging the denial. *Id*.  "If the [B]oard affirms the denial of the application, the office of the county attorney for such county *shall* institute suit for declaratory judgment in a court of record in such county, within five (5) days of the date of any such denial seeking an immediate judicial determination of whether such application has

---

[3]Under the Act, the application must include, among other things: (1) the applicant's name and address; (2) written proof that the applicant is at least 18-years old; (3) information regarding "[t]he business, occupation or employment of the applicant in an adult-oriented establishment for five (5) years immediately preceding the date of the application"; (4) information regarding the applicant's prior license history, including whether any prior licenses have been revoked or suspended; (5) disclosures of any prior convictions for various criminal acts.  Tenn. Code Ann. § 7-51-1005(b).  As stated, Plaintiffs do not challenge the validity of these criteria; we note the Supreme Court and our Court sitting *en banc* have approved similar criteria.  *See Littleton*, 541 U.S. at 783; *Deja Vu*, 411 F.3d at 787-88.

been properly denied under the law." *Id*. § 1110(c) (emphasis added). The Act further requires that "the applicant *shall* be entitled to judicial determination of the issues within two (2) days after joinder of issue, and a decision *shall* be rendered by the court within two (2) days of the conclusion of the hearing." *Id*. § 1110(d) (emphasis added). It is the Board's burden at this stage to show that the license denial was not arbitrary or capricious. *Id*. § 1110(e).

Thus the Act on its face requires prompt judicial review of an adverse decision by the Board. Plaintiffs contend that the Act's promise of judicial review is "illusory" because under the common law of Tennessee, judges have wide discretion in declaratory judgment actions. Plaintiffs apparently suggest that despite the Act's explicit command for a decision within two days of the hearing, Tenn. Code Ann. § 7-51-1110(d), a Tennessee judge nevertheless retains discretion to decline to hear a declaratory judgment action brought pursuant to the Act or to rule promptly on the merits. Defendants counter that the Act explicitly commands judges sitting in review of a Board decision to determine whether the Board's decision was proper under the law. We are persuaded that the Act supercedes any common law discretion committed to judges insofar as declaratory actions under the Act are concerned. Indeed, the Act specifically affirms that "[t]he provisions of this part mandating judicial review shall control over general provisions for declaratory judgment actions in the event of any conflict." § 1110(f). Under the Supreme Court's recent decision in *City of Littleton* on what constitutes sufficiently prompt judicial review for purposes of a facial challenge to a licensing scheme, we conclude that the Act's provisions are more than adequate. *City of Littleton*, 541 U.S. at 781-83 (for purposes of facial challenges to licensing schemes, even the mere ability to appeal to a state court, absent "reason to doubt the willingness of [the state's] judges to exercise [their] powers wisely so as to avoid serious threats of delay-induced First Amendment harm," is sufficient to satisfy the prompt judicial review requirement); *see also Deja Vu of Cincinnati*, 411 F.3d at 787-88.

Plaintiffs next contend the Act does not permit first-time applicants with extant businesses to enjoy the status quo, i.e., continue to run their businesses as normal, while they await a final judicial decision on their application. *See Freedman*, 380 U.S. at 58-59; *FW/PBS, Inc.*, 493 U.S. at 229-30. This claim is without merit since the Act permits a first-time applicant with a business in existence at the time of the Act's adoption to operate as normal for 120 days while it applies for a license and, if the application is denied, to seek judicial review under the Act's declaratory judgment provision. Tenn. Code Ann. § 7-51-1104(e). Plaintiffs do not present any reason for us to conclude that 120 days is too short a time for completion of an initial application review process, an appeal to the Board, and a subsequent declaratory judgment action under § 1110(b).[4] Indeed, so far as we can discern, Plaintiffs do not even address the 120-day grace period. Their sole argument appears to be that the *only* constitutionally acceptable way to maintain the status quo is by issuing applicants temporary permits that expire upon a final judicial decision on the merits. But the cases Plaintiffs cite do not stand for such a clear proposition; they hold only that providing temporary permits is *one* constitutionally acceptable way to maintain the status quo, *see Deja Vu of Nashville*, 274 F.3d at 403; *Deja Vu of Kentucky v. Lexington-Fayette Urban County Gov't*, 194 F. Supp. 2d 606, 616-17 (E.D. Ky. 2002), which is what the *en banc* Court recently reiterated. *Deja Vu of Cincinnati*, 411 F.3d at 788 ("Temporary permits are one way to comply with *Freedman*'s requirement that '[a]ny restraint imposed in advance of a final judicial determination on the merits must . . . be limited to the preservation of the status quo.'") (quoting *Freedman*, 380 U.S. at 59).

---

[4]The initial application review process, culminating in the Board's first decision on the application, could last at most 60 days. *See* Tenn. Code Ann. §§ 7-51-1105(d), -1106(4). A final Board decision on the applicant's appeal would usually issue no more than 15 days later, depending on how soon the applicant filed a request for a hearing, and in no event more than 22 days later. *See id*. § 1110(b). Within five days of the Board's final decision adjudicating the applicant's appeal, the county attorney would be required to institute an action under § 1110(c), and, within two days after joinder of issue, the court would be required to hold a hearing to culminate, no later than two days thereafter, in the issuance of a final decision on the merits. *Id*. § 1110(d).

The rule is simply that the status quo must be maintained in some fashion and, assessing the act only on its face, as we must in this case, we cannot say the Act's 120-day grace period is insufficient to that task.

## B.     Overbreadth Claim

Plaintiffs maintain that a county ordinance[5] related to the Act is unconstitutionally overbroad.[6] The ordinance prohibits, among other things, nudity and the performance of a wide range of arguably sexually suggestive acts in "public place[s] where intoxicating liquors [ ] are offered for sale, served or consumed." Ord. § 1(a). We reprint the ordinance's complete definition of "public place" in the margin, but suffice it to say here that the definition is so broad that it is effectively all-encompassing, exempting only restrooms, showers, medical facilities, motel rooms and the like, modeling classes at state-accredited schools, and state-licensed "family-oriented clothing optional facilit[ies]" – places, one would imagine, where performances needing the protection of the First Amendment do not often occur.[7] Ord. § 1(h). Plaintiffs argue that this definition is overbroad because it would proscribe myriad performances that involve nudity or sexually suggestive content but to which the alleged harmful secondary effects that purportedly motivated the passage of the ordinance do not attend.

The overbreadth doctrine is an extraordinary but firmly-established means of enforcing First Amendment rights. Traditional standing is not a requirement, i.e., a plaintiff may assert the interests

---

[5] The ordinance lacks a citation (it appears at JA 36-39), so we refer to it only as "the ordinance." The Decatur County Commission adopted the ordinance pursuant to Tenn. Code Ann. § 57-5-105, which authorizes Tennessee's county legislatures to regulate beer-selling establishments so that the sale of beer does not "interfere with public health, safety and morals . . . ." § 105(b)(1).

[6] In their brief, Plaintiffs also present vague and general assertions to the effect that the Act includes substantive provisions that violate their First Amendment right to freedom of expression. But Plaintiffs have not identified which provisions of the Act they object to (there are many) and, in any event, to the extent they offer argument on the constitutionality of the Act's substantive provisions their argument is so vague and perfunctory that, like the district court, we consider this claim waived. *See United States v. Demjanjuk*, 367 F.3d 623, 638 (6th Cir. 2004); *United States v. Crozier*, 259 F.3d 503, 517 (6th Cir. 2001); *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997).

[7] The ordinance defines "Public place" as:

> [A]ny location frequented by the public, or where the public is present or likely to be present, or where a person may reasonably be expected to be observed by members of the public. "Public places" includes, but is not limited to, streets, sidewalks, parks, business and commercial establishments (whether for profit or not-for-profit and whether open to the public at large or where entrance is limited by a cover charge or membership requirement and/or both), bottle clubs, hotels, motels, restaurants, night clubs, country clubs, cabarets and meeting facilities utilized by any religious, social, fraternal or similar organizations. Premises used solely as a private residence, whether permanent or temporary in nature are not deemed to be a public place. "Public places" does not include enclosed single sex public restrooms, enclosed single sex functional showers, locker and/or dressing room facilities, enclosed motel rooms and hotel rooms designed and intended for sleeping accommodations, doctors' offices, portions of hospitals and similar places in which nudity or exposure is necessarily or customarily expected outside of the home and the sphere of privacy constitutionally protected therein; nor does it include a person appearing in a state of nudity in a modeling class operated by a proprietary school, licensed by the state of Tennessee, a college, junior college, or university supported entirely or partly by taxation, or a private college or university where such private college or university maintains and operates educational programs in which credits are transferable to a college, junior college, or university supported entirely or partly by taxation or an accredited private college. "Public place" does not include a private facility which has been formed as a family-oriented clothing optional facility, properly licensed by the state.

Ord. § 1(h).

of others not before the court even if it is only their protected expression, not the plaintiff's, that the challenged ordinance is said to infringe. *Board of Airport Comm'rs v. Jews for Jesus, Inc.*, 482 U.S. 569, 574 (1987); *City Council of Los Angeles v. Vincent*, 466 U.S. 789, 801 (1984); *Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973); *NAACP v. Button*, 371 U.S. 415, 433 (1963); *Deja Vu of Nashville*, 274 F.3d at 387; *Triplett Grille, Inc. v. City of Akron*, 40 F.3d 129, 135 (6th Cir. 1994); *Giovani Carandola, LTD. v. Bason*, 303 F.3d 507, 512 (4th Cir. 2002). Thus the fact that Sports Club is unlikely to offer performances of Shakespeare's plays is immaterial. *See Carandola*, 303 F.3d at 512; *Deja Vu of Nashville*, 274 F.3d at 387; *see also Taxpayers for Vincent*, 466 U.S. at 801-802. And because, as we discuss in greater detail below, the purpose of the overbreadth doctrine is "to prevent the chilling of future protected expression," *Staley v. Jones*, 239 F.3d 769, 779 (6th Cir. 2001), it is likewise immaterial that, as the district court found, Decatur County presently lacks venues where "serious literary or theatrical productions are reasonably likely to occur."

We have held that "[a] law is overbroad under the First Amendment if it 'reaches a substantial number of impermissible applications' relative to [its] legitimate sweep." *Deja Vu of Nashville*, 274 F.3d at 387 (quoting *New York v. Ferber*, 458 U.S. 747, 771 (1982)); *see also Broadrick*, 413 U.S. at 613. If an ordinance is held to be overbroad, the result is dramatic: "any enforcement of [the ordinance] is totally forbidden until and unless a limiting construction or partial invalidation so narrows it as to remove the seeming threat or deterrence to constitutionally protected expression." *Broadrick*, 413 U.S. at 613. Consequently, the invalidation of an ordinance on overbreadth grounds is "strong medicine" to be used "sparingly and only as a last resort." *Id.*

We note at the outset that Plaintiffs do not contend we must apply strict scrutiny to determine whether the ordinance is overbroad. Instead, both parties phrase their overbreadth arguments in the language of intermediate scrutiny[8] and because we find the ordinance overbroad under that standard, we leave for another day the question whether strict scrutiny ought to apply to an ordinance that prohibits not only nudity but also sexually suggestive acts performed while clothed.[9] As it has been applied in the overbreadth context, intermediate scrutiny requires (at least) proof that most establishments to which the challenged ordinance or statute applies are likely to spawn harmful secondary effects if permitted to hold performances involving nudity and/or content that could reasonably be viewed as sexually suggestive. *See Triplett Grille*, 40 F.3d at 135-36; *Carandola*, 303 F.3d at 513-15; *Schultz v. City of Cumberland*, 228 F.3d 831, 847-50 (7th Cir. 2000); *see also Deja Vu of Nashville*, 274 F.3d at 387. This is a corollary of the principle that an ordinance or statute is overbroad if it "'reaches a substantial number of impermissible applications' relative to [its] legitimate sweep." *Deja Vu of Nashville*, 274 F.3d at 387 (quoting *Ferber*, 458 U.S. at 771).

Citing our decision in *Triplett Grille*, 40 F.3d 129 (6th Cir. 1994) and the Fourth Circuit's decision in *Carandola*, 303 F.3d 507 (4th Cir. 2002), Plaintiffs submit that the ordinance at issue here reaches a substantial amount of expression not usually attended by the harmful secondary effects – "criminal activity, moral degradation[,] disturbances of the peace and good order of the community, [and threats] to the public's health, safety, and morals, and the economic development of Decatur County" – the ordinance was enacted to prevent. *See* Ord. Preamble. Section 1(a) of the ordinance makes it unlawful for the proprietor at a public place where intoxicating liquors are sold, served, or consumed: to "suffer or permit any female person . . . to expose . . . that area of the human

---

[8]We address *infra* Defendants' alternative argument that the ordinance need only withstand rational basis review under *California v. LaRue*, 409 U.S. 109 (1972).

[9]*See Schultz v. City of Cumberland*, 228 F.3d 831, 847-50 (7th Cir. 2000) (applying strict scrutiny to review an as-applied challenge to an ordinance similar to the one at issue here but intermediate scrutiny to review an overbreadth challenge to the same ordinance); *Giovani Carandola, LTD. v. Bason*, 303 F.3d 507, 513-15 (4th Cir. 2002) (applying intermediate scrutiny to review an overbreadth challenge to a statute and regulations similar to the ordinance at issue here).

breast at or below the top of the areola"; to permit any female person to employ a device intended to simulate the appearance of a nude human breast; to "suffer or permit any person . . . to expose . . . his or her genitals, pubic area, buttocks, anus or anal cleft or cleavage, or to show the covered male genitals in a discernably turgid state"; or to permit any person to employ a device intended to "give the appearance of or simulate the" parts of the body listed just above. Ord. § 1(a) (1)-(4). In addition to the liability section 1(a) imposes on proprietors, sections 1(b) and 1(c) make the person doing the exposing or employing the simulation device individually liable. Finally, section 1(d) makes it unlawful

> [t]o allow any entertainment on [liquor-] licensed premises by any owner, licensee, agent of licensee, guest of licensee, employee, independent contractor of licensee, patron, or guest, which shall contain the performance of acts or simulated acts of sexual intercourse, masturbation, sodomy, bestiality, oral copulation, flagellation, or any sexual acts which are prohibited by law included [sic] but not limited to table dancing, lap dancing, couch dancing, or including the actual or simulated touching, caressing, or fondling of the breasts, buttocks, anus, or genitals, or the actual or simulated displaying of the pubic hair, anus, vulva, or genitals; or the nipples of a female.

Ord. § 1(d).

We invalidated a similar "public place" ordinance in *Triplett Grille* on the ground that it was overbroad. The ordinance there employed a similar definition of nudity but tread more lightly on expression, proscribing only sexual intercourse, "deviant sexual conduct," and the fondling of one's genitals or those of another. 40 F.3d at 131 n.2 (quoting the City of Akron's (Ohio) ordinance). The ordinance in *Triplett* defined "public place" more broadly than the ordinance at issue in this case, however, because it did not apply only to public places where intoxicating liquors were sold, served, or consumed. We explain later why *Triplett* is relevant despite this distinction. The other differences between the two ordinances are minimal and we think immaterial because, like the *Triplett* ordinance, the county's ordinance reaches a wide swath of public places likely to present performances not usually attended by harmful secondary effects. *Compare id.* (defining "public place" as "any street, sidewalk, right of way and any public or private building or place where the general public is invited") *with* Ord. § 1(a) (defining "public place" in a similar manner but exempting homes, rest rooms, medical facilities, modeling classes, etc.). We held that the ordinance in *Triplett* was unconstitutionally overbroad because the city of Akron did not "demonstrate a link between nudity in non-adult entertainment and secondary effects," 40 F.3d at 135, and because the ordinance did not include limiting provisions such that it could be modified to apply only in contexts where harmful secondary effects were likely to exist. *Id.*

The statute in *Carandola* proscribed, in any establishment licensed to sell beer, wine, or liquor, nudity, "[a]ny entertainment that includes or simulates sexual intercourse or any sexual act," and a variety of other sexual or sexually suggestive acts similar or identical to those proscribed by the ordinance at issue here.[10] 303 F.3d at 510. The Fourth Circuit observed that the state liquor commission had produced no evidence that liquor-licensed establishments in general, as opposed to those particular establishments that regularly present nude or semi-nude dancing, cause harmful secondary effects. *Id.* at 515-16. This omission was crucial, for as the Fourth Circuit explained:

> The restrictions challenged here . . . sweep far beyond bars and nude dancing establishments. They reach a great deal of expression in the heartland of the [First

---

[10]Such as: actual or simulated sexual intercourse, sodomy, bestiality, oral copulation, flagellation and "the touching, caressing or foundling of the breasts, buttocks, anus, vulva, or genitals." *Carandola*, 303 F.3d at 510 (quoting a North Carolina statute and rule adopted pursuant to it).

Amendment's] protection. As the Commission has conceded, the plain language of the restrictions prohibits on licensed premises any entertainment that 'simulate[s]' sexual behavior, even if performers are fully clothed or covered, and even if the conduct is integral to the production – for example, a political satire, a Shakespeare play depicting young love, or a drama depicting the horrors of rape. The Commission has further conceded that the restrictions have the same prohibitory effect on much non-erotic dance – such as a ballet in which one dancer touches another's buttock during a lift – and all nudity or simulated nudity, however brief, in productions with clear artistic merit – such as the Pulitzer Prize winning play, *Wit*. . . . The Commission has offered nothing . . . to suggest that these mainstream entertainments, to which it has conceded the restrictions apply, produce the kind of adverse secondary effects that the state seeks to prevent. Indeed, it is difficult to believe that such evidence exists. One simply does not associate these performances with disorderly behavior – whether or not alcohol is served.

*Carandola*, 303 F.3d at 516 (citation omitted).

Defendants do not argue that the ordinance at issue here is supported by proof that, as a rule, harmful secondary effects usually follow when any public places where alcohol is available are permitted to host performances involving nudity, incidental touching, or even sexually suggestive acts, so *Triplett* and *Carandola* are not distinguishable on that basis. Nor do Defendants suggest that the ordinance can be construed to except "mainstream" artistic or entertainment venues, *see Carandola*, 303 F.3d at 516 – i.e., venues unlikely to spawn harmful secondary effects – from its coverage. Instead Defendants urge us to adopt the district court's conclusion that because "[t]here are no theatrical, performance, or entertainment venues [in Decatur County] where serious literary or theatrical [performances] are reasonably likely to occur," the ordinance cannot be overbroad. JA 55 (Dist. Ct. Op.). Defendants also suggest that because the ordinance at issue here targets only public places where alcohol is sold, served or consumed, our analysis should be controlled by *California v. LaRue*, 409 U.S. 109 (1972), where the Supreme Court reviewed a similar California liquor law under the highly deferential rational basis standard. We address each argument in turn.

It is true that we must adopt a limiting construction to save the ordinance from invalidation if it is "readily susceptible" to such a construction. *Virginia v. American Booksellers Ass'n*, 484 U.S. 397 (1988); *Erznoznik v. City of Jacksonville*, 422 U.S. 205, 214-16 (1975); *Broadrick*, 413 U.S. at 613; *Triplett*, 40 F.3d at 136. But we do not think the fact that Decatur County purportedly lacks, at the present time, venues likely to hold performances of literary or artistic value should affect our construction of the ordinance's plain language. We are aware of only one case in which a court saved an ordinance of the sort at issue in this case because the jurisdiction in which the ordinance controlled lacked venues likely to offer protected expression but unlikely to spawn harmful secondary effects. *See SOB, Inc. v. County of Benton*, 317 F.3d 856, 864-65 (8th Cir. 2003). We think this aspect of *SOB* stands in contrast to the great weight of the pertinent case law; and, in any event, the case is distinguishable on multiple grounds.

A number of courts have considered overbreadth challenges to statutes or ordinances banning nudity and/or sexually suggestive conduct in an ostensibly wide range of public places. In cases where an ordinance or statute survived review it was because an express exception in the law's text or other specific language made the law "readily susceptible" to a limiting construction. *Schultz v. City of Cumberland*, 228 F.3d 831, 849-50 (7th Cir. 2000) (because the ordinance's stated scope of application, theaters that "regularly feature[ ]" nudity, was overbroad, the court construed the text to mean theaters that "always feature[ ]" nudity); *Farkas v. Miller*, 151 F.3d 900, 901-903, 905 (8th Cir. 1998) (statute expressly excepted any "theater, concert hall, art center, museum, or similar establishment which is primarily devoted to the arts or theatrical performances") (citation omitted); *J&B Entertainment, Inc. v. City of Jackson*, 152 F.3d 362, 366 (5th Cir. 1998) (ordinance expressly

excepted persons "engaged in expressing a matter of serious literary, artistic, scientific or political value").[11] Similarly, the Supreme Court sustained a state statute proscribing the possession of child pornography against an overbreadth challenge because it had been authoritatively construed by the state's supreme court to avoid "penalizing persons for viewing or possessing innocuous photographs of naked children." *Osborne v. Ohio*, 495 U.S. 103, 113-14 (1990).

These results distinguish the cases just cited from the case at hand, for if the question is whether a challenged ordinance can be "readily" construed in a way that avoids potential unconstitutional applications, surely the answer must depend more on the language the drafters employed than on the *post hoc* representations of the local officials charged with enforcing the ordinance. This is why the Supreme Court has struck a delicate balance between, on the one hand, accepting a state or local government's plausible saving construction when an ordinance or statute is "readily susceptible" to it, *American Booksellers*, 484 U.S. at 397, and, on the other hand, declining to accept a construction where to do so would amount to rewriting state or local law – an enterprise the federal courts are not empowered to undertake. *Id.*; *Erznoznik*, 422 U.S. at 215; *Gooding v. Wilson*, 405 U.S. 518, 520 (1972); *United States v. Thirty-Seven Photographs*, 402 U.S. 363, 369 (1971); *cf. Ward v. Rock Against Racism*, 491 U.S. 781, 795-96 (1989). There is an important distinction for First Amendment purposes between offering a narrowing construction to which an ordinance is readily susceptible and producing evidence that the admittedly overbroad ordinance presently has no unconstitutional effect. The first is an attempt to articulate what the ordinance ought to *mean* in order that it complies with constitutional demands, while the second concedes the deficiency but effectively asks the court to adopt a "no harm, no foul" rule; it is rather like saying we should not care about the tree falling in the forest because no one was there to hear it fall. Such an interpretation of the overbreadth doctrine is not consonant with its purpose, which is "to prevent the chilling of future protected expression." *Staley*, 239 F.3d at 779 (citing *Ferber*, 458 U.S. at 768). In sum, neither proof that an ordinance as currently applied has no unconstitutional effect, nor assurances offered by the relevant local authorities that the ordinance will not be put to such an effect in the future, constitute "constructions" of the ordinance, as that term is ordinarily understood. *See, e.g., Osborne*, 495 U.S. at 113-14; *Schultz*, 228 F.3d at 849-50. *Cf. Carandola*, 303 F.3d at 517-18 (observing that express exceptions are the surest indications of legislative intent regarding the scope of an ordinance or statute); *Ways v. City of Lincoln*, 274 F.3d 514, 519-20 (8th Cir. 2001) (observing same and, faced with a nudity and suggestive conduct ordinance that lacked exceptions, declining to accept the city's representation that it was not intended to apply to "artistic venues").

For these reasons, we think the Eighth Circuit may have crossed the line in *SOB* insofar as its decision to uphold a similar ordinance rested on proof that there were no artistic or literary venues in the relevant county and on the local prosecutor's promise not to enforce the statute against the proprietors of such venues. 317 F.3d at 865. In any event, *SOB* is distinguishable in two significant respects. First, and most critically, the ordinance in *SOB* included an exception for "any theatrical production performed in a theater by a professional or amateur theatrical or musical company which has serious artistic merit." *Id.* at 864-65 (quoting ordinance). The Eighth Circuit lamented that this exception was "inexplicably limited to the ordinance's public-nudity prohibition, so it does not appear to limit the public-genital-fondling prohibition," *id.*, the latter of which appeared to prohibit even simulated caressing or incidental touching while clothed. It was against this peculiar backdrop that the *SOB* court considered the County Attorney's affidavit representing that there were no theaters in the county and that no prosecutions would be brought against theaters if any emerged. *Id.* Given the express exception to the nudity ban, we think the *SOB* court's

---

[11]Whether an exception as subjectively phrased as the ones in these cases might render an ordinance or statute void for vagueness is a separate question, one that should be addressed only in the context of a vagueness challenge. *See, e.g., J&B Entertainment*, 152 F.3d at 367-68.

decision to read into the ordinance an analogous exception to the genital-fondling ban is a construction of an entirely different character than the one proposed by Defendants in this case, in which we confront an ordinance that lacks exceptions of any kind. *SOB* is also distinguishable because the prosecutor in that case affirmatively represented that prosecutions would not be brought under the genital-fondling provision against theaters that fell within the exception to the nudity ban. While we have said that such a promise is not in any sense a "construction" of the ordinance, it is more than what Defendants have produced on this record – namely, a representation that Decatur County's admittedly overbroad ordinance, if permitted to stand, would have no present unconstitutional effect.

Finally, we consider Defendants' argument that under *LaRue*, 409 U.S. 109 (1972), the ordinance is not overbroad. In *LaRue*, the Court considered a challenge to California regulations substantially similar to the ordinance at issue here. *Id*. at 111-12. The regulations were adopted pursuant to the state's power to regulate the sale of liquor and they applied only to establishments holding liquor licenses. *Id*. The plaintiffs, proprietors of and dancers at liquor-licensed nude-dancing establishments, did not challenge the regulations under the overbreadth doctrine but rather on the theory that the regulations were facially violative of the First Amendment to the extent they would be applied to establishments like those operated by the plaintiffs. The Supreme Court rejected this claim, noting that the record in the case was "sordid" and filled with instances of "bacchanalian revelries" (e.g., oral copulation, masturbation, and other sexual contact) occurring at liquor-serving nude-dancing establishments. *Id*. at 111, 118. In addition to states' inherent police powers, the Court held, the Twenty-First Amendment required an "added presumption in favor of the validity of state regulation in this area." *Id*. at 118. Applying these principles, the Court upheld the regulations because they were not irrational. *Id*. at 116-18.

*LaRue*'s rationale is no longer good law. In *44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484 (1996), the Court "disavow[ed] [*LaRue*'s] reasoning insofar as it relied on the Twenty-First Amendment." *Id*. at 516. The Court held "that the Twenty-first Amendment does not qualify the constitutional prohibition against laws abridging the freedom of speech embodied in the First Amendment." *Id*. *LaRue*'s holding survived *Liquormart* because, as the Court noted: "in . . . cases [subsequent to *LaRue*], the Court has recognized that the States' inherent police powers provide ample authority to restrict the kind of 'bacchanalian revelries' described in the *LaRue* opinion regardless of whether alcoholic beverages are involved." *Id*. at 515. The Court cited *Young v. American Mini Theatres, Inc.*, 427 U.S. 50 (1976) and *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560 (1991) (plurality opinion) for this proposition – two cases in which it had applied intermediate scrutiny to laws designed to remedy harmful secondary effects. A number of courts have interpreted *Liquormart*'s reaffirmation of *LaRue*'s holding to mean that the *LaRue* regulations would have survived intermediate scrutiny[12] – and, moreover, that they would have *had* to survive such scrutiny to comport with the First Amendment. *Carandola*, 303 F.3d at 513 n.2, 519-20; *Dream Palace v. County of Maricopa*, 384 F.3d 990, 1018-19 (9th Cir. 2004); *Sammy's of Mobile, LTD v. City of Mobile*, 140 F.3d 993, 996 (11th Cir. 1998); *Ben's Bar, Inc. v. Village of Somerset*, 316 F.3d 702, 710-11 (7th Cir. 2003). *But see Carandola*, 303 F.3d at 521-23 (Niemeyer, J., dissenting); *BZAPS, Inc. v. City of Mankato*, 268 F.3d 603, 608 (8th Cir. 2001) (following *LaRue* without applying intermediate scrutiny in a case that did not involve an overbreadth claim).

We agree with this reading of *LaRue* and *Liquormart* and therefore decline to accept Defendants' suggestion that they need not furnish the type of evidence necessary to support the breadth of the Decatur County ordinance – i.e., evidence tending to show that all, or even most,

---

**12**This makes sense because *LaRue* did not involve an overbreadth claim, but rather a claim that the challenged regulations were facially unconstitutional as applied to nude-dancing establishments, a subset of all liquor-licensed businesses. *See LaRue*, 409 U.S. at 111-14; *Carandola*, 303 F.3d at 519-20; *Dream Palace v. County of Maricopa*, 384 F.3d 990, 1018-19 (9th Cir. 2004).

public places where alcohol is sold, served or consumed, are likely to spawn negative secondary effects if such places are permitted to host performances involving nudity or acts that could reasonably be viewed as sexually suggestive. *See Triplett*, 40 F.3d at 135-36; *Carandola*, 303 F.3d at 515-17; *see also Deja Vu of Nashville*, 274 F.3d at 387; *Ways*, 274 F.3d at 518-19; *Farkas*, 151 F.3d at 904. Like the statute in *Carandola* and the ordinance in *Triplett*, the ordinance at issue here "makes no attempt to regulate only those expressive activities associated with harmful secondary effects and includes no limiting provisions. Instead, [it] sweeps within its ambit expressive conduct not generally associated with" the kinds of harmful secondary effects it was designed to prevent. *Triplett*, 40 F.3d at 129; *see also Carandola*, 303 F.3d at 516; *Ways*, 274 F.3d at 518-19. Therefore, the ordinance "reaches a substantial number of impermissible applications." *Ferber*, 458 U.S. at 771; *Broadrick*, 413 U.S. at 613. Accordingly, we hold that the ordinance is overbroad. Because this means "any enforcement [of the ordinance as it is now written] is totally forbidden," *Broadrick*, 413 U.S. at 613, we need not and should not consider Plaintiffs' alternative claim that certain of the ordinance's provisions are unconstitutional as applied to nude-dancing establishments. *See Carandola*, 303 F.3d at 520.

## IV.  CONCLUSION

The grant of summary judgment to Defendants on the prior restraint claim is **AFFIRMED** and the grant of summary judgment to Defendants on the overbreadth claim is **REVERSED**. The matter is **REMANDED** so that the district court may enter judgment in favor of Plaintiffs on the overbreadth claim and issue an injunction permanently enjoining enforcement of the ordinance.